**STATE OF HAWAI'I**, Plaintiff–Appellant, v. **DATHAN CHUNG**, Defendant–Appellee

NOS. 15847 and 16111*

(CR. NO. 91–0134)

DECEMBER 1, 1993

LUM, C.J.,** MOON, KLEIN, AND LEVINSON, JJ., AND RETIRED JUSTICE HAYASHI,*** ASSIGNED BY REASON OF VACANCY

---

*By order dated July 13, 1992, this court consolidated Nos. 15847 and 16111.

**Chief Justice Lum, who heard oral argument in this case, retired on March 31, 1992. *See* HRS § 602–10 (1985).

***Retired Justice Hayashi, who heard oral argument in this case, was unavailable for signature when this opinion was filed. *See* HRS § 602–10 (1985).

OPINION OF THE COURT BY LEVINSON, J.

In No. 15847, the plaintiff–appellant State of Hawaiʻi (State) appeals the findings of fact (FOFs), conclusions of law (COLs), and order, entered by the First Circuit Court on December 13, 1991, granting the defendant–appellee Dathan Chung's motion to dismiss Counts I and II of the indictment charging him with two counts of terroristic threatening in the first degree. Because we agree with the State that the circuit court committed reversible error, we vacate the order granting Chung's motion to dismiss and remand for further proceedings consistent with this opinion.[1]

---

[1] Count III of the indictment charged Chung with the offense of Possession, Use or Threat to Use a Firearm in the Commission of a Felony, in violation of Hawaiʻi Revised Statutes (HRS) §§ 134–6(a)

# I. BACKGROUND

On January 15, 1991, the Oahu Grand Jury returned a three–count indictment charging Chung with two counts of terroristic threatening in the first degree[2] and one count of possession, use or threat to use a firearm in the commission of a felony. Count I alleged that during the period from September 1, 1989 to December 19, 1990, Chung

> threatened, by word or conduct, to cause bodily injury to another person, by threatening another person on more than one occasion for the same or similar purpose, in reckless disregard of the risk of terrorizing another person, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707–716(1)(a) of the Hawai'i Revised Statutes.[3]

and (d) (Supp. 1992). After the circuit court dismissed Counts I and II, Chung moved to dismiss Count III on December 23, 1991, on the ground that the offense charged therein could no longer be proved. By order dated April 28, 1992, the circuit court dismissed Count III; the State's appeal from that order forms the basis of No. 16111.

On July 13, 1992, the State moved this court to consolidate Nos. 15847 and 16111 on the ground that "the disposition of No. 16111 is entirely dependent upon the result this court reaches in No. 15847." Agreeing with the State and there being no objection by Chung, we consolidated the appeals.

[2] Pursuant to HRS § 707–716(2) (Supp. 1992), "[t]erroristic threatening in the first degree is a class C felony."

[3] HRS § 707–716(1) (Supp. 1992) provides in relevant part:

> A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
>> (a)  By threatening another person on more than one occasion for the same or a similar purpose[.]

HRS § 707–715 (1985) defines "terroristic threatening" in relevant part to mean:

Count II alleged that during the same period, Chung "threatened, by word or conduct[,] to cause bodily injury to a public servant, in reckless disregard of the risk of terrorizing said public servant, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707–716(1)(c) of the Hawaiʻi Revised Statutes."[4] Count III alleged that on December 18 and 19, 1990, Chung

> knowingly possess[ed] or intentionally use[d] or threaten[ed] to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Possession, Use or Threat to Use a Firearm in the Commission of a Felony, in violation of Section 134–6(a) and (d) of the Hawaiʻi Revised Statutes.[5]

At the time of the alleged offenses, Chung was a teacher at Pearl City High School (PCHS).

---

threaten[ing], by word or conduct, to cause bodily injury to another person . . . :
>    (1)  With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

[4] HRS § 707–716(1)(c) (Supp. 1992) provides in relevant part that terroristic threatening in the first degree can also be committed by engaging in terroristic threatening "[a]gainst a public servant, including but not limited to an educational worker, who for the purposes of this section shall mean an administrator, specialist, counselor, teacher, or other employee of the department of education . . . ."

[5] HRS § 134–6 (Supp. 1992), entitled "[p]ossession or use of firearm in the commission of a felony; place to keep firearms; loaded firearms; penalty," provides in relevant part:

>    (a)  It shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the

During the grand jury proceedings, the State elicited the testimony of four of Chung's fellow teachers, the principal, Gerald Suyama (who was the alleged victim of the terroristic threatening), and three officers of the Honolulu Police Department (HPD). The first witness, David Langen, testified that he was an English teacher at PCHS and, as such, a colleague and friend of Chung's for over ten years. From the beginning of the 1989–90 school year through December 18, 1990 (the relevant period), Chung became increasingly preoccupied with a belief that Suyama was "hounding him" and that a "long succession" of principals at PCHS, culminating with Suyama, were "out to get the weaker teachers, the ones who couldn't control their classes." During the relevant period, Chung exhibited "a deterioration of behavior and attitude" and once displayed a gun. Approximately three times, Chung spoke in Langen's presence about shooting Suyama. Chung's statements caused Langen to be "very concerned, and dismayed, and frightened," prompting Langen to try "to talk him out of it." Langen considered Chung's statements to be "very real threat[s] . . . to be afraid of." On one occasion, Langen recalled Chung to have articulated the following "pretty frightening stuff":

> I can't take this any more. The principal [is] just leaning on me. . . . I'm a man grasping at straws. . . . [Y]ou can't stop a man if he doesn't want to live any more. . . . [A] day doesn't pass

---

commission of a felony, whether the firearm was loaded or not, and whether operable or not.
　. . . .

(d) Any person violating this section by possessing, using or threatening to use a firearm while engaged in the commission of a felony shall be guilty of a class A felony. . . .

that [I] don't feel like killing myself. . . . I think
I'll bring a gun[;] I'll shoot the principal and shoot
myself.

Not wanting to get Chung in trouble, Langen "hinted" to
Suyama that Chung's situation was "dangerous" and that
it "would be very counter–productive" for Suyama to "be
leaning on" him.

A second teacher at PCHS, Andrew Grabar, testi-
fied that on December 18, 1990, Chung entered Grabar's
classroom, complained of having problems and taking
"much medication," and said that he was going to shoot
Suyama. Chung then produced from his waist what
appeared to be a .22 caliber semiautomatic pistol and two
fully loaded clips of cartridges. Placing the pistol on
Grabar's table, Chung unloaded it by removing another
fully loaded clip and an additional shell from the pistol's
chamber. Chung then said, "I'm going to shoot the princi-
pal; I'm going to kill him." Chung also spoke of killing
himself. At the time, Grabar "was so scared" that he
"didn't know what to do." The next morning, however,
Grabar went to the school early and met with the vice
principal; together they notified the police. Grabar filled
out a police report and later the same day identified the
pistol and clip that Chung had previously displayed.

A third teacher, John Doughty, testified that on
December 18, 1990, Chung (who looked like "he was not
all there") approached the table at which Doughty was
seated in the teachers' lunch room, sat down, and said that
"the administration or the principal was out to get him
again." Alluding to "some stories about Viet Nam," Chung
said that "they weren't going to get him because he was
going to take care of them." Chung then "pulled out a clip
from a .22," placed it on the table, asked Doughty if he
knew what it was, and said that "if the principal was going

to go and if he had to go with him[,] he would." After invoking Chung's family in an effort to dissuade Chung from any ill–advised action, Doughty approached the vice principal and informed him that Chung "wasn't all there" and added, "now, I'm telling you this, right, so if anything happens, I've told you."

The fourth teacher to be called as a witness was Jacob Hueo, who testified that on December 18, 1990, he was watching a band concert between two buildings at the high school when Chung approached him, asked how he got along with "the old man," and expressed a desire to shoot Suyama, noting that he — Chung — did not care to live. Chung produced two clips of bullets from his pocket, displayed them to Hueo, and asked, "[W]hat are you going to do? You going to call the policeman?" Hueo advised Chung that he was going to inform the vice principal of what had occurred instead. Hueo subsequently did so.

Gerald Suyama testified that he had been the principal of PCHS for the last four and a half years, and, as such, was an administrator in the employ of the State of Hawai'i Department of Education. He further testified that, early in the 1989–90 school year and on December 18, 1990, he was advised that Langen and Grabar, respectively, had stated that Chung, who was the art teacher at PCHS, had threatened to shoot him. Suyama believed that Chung's threats were the result of "pressure" that Suyama had been exerting on Chung because of some of the latter's teaching tactics and techniques.

HPD officer Stephen Winter testified that on December 19, 1990, at 8:01 a.m., he responded to a report of terroristic threatening at PCHS. He interviewed Grabar, who told him that Chung had expressed the intention to shoot and kill Suyama on the previous day. Upon being

advised that Chung had just come onto school property and that, as of December 18, 1990, he had been placed on a ten day paid administrative leave, Winter called for backup assistance. Winter and HPD officer Hector Riviera subsequently met with Chung in the vice principal's office, where they recovered a semiautomatic pistol and ammunition from Chung.

Officer Riviera's testimony corroborated that of Officer Winter. In addition, Riviera identified the pistol recovered from Chung as a Barretta Model 21A .22 caliber semiautomatic pistol registered to Chung's wife.

The State's final witness, HPD detective Charles Davis, testified that he "testfired" the pistol recovered from Chung and that it was determined to be operable.

On May 1, 1991, Chung filed a motion to dismiss Counts I and II of the indictment on the alternative grounds that (1) "the terroristic threatening statute . . . underlying each count is unconstitutional as applied to the facts in the . . . case," and (2) the grand jury was presented with insufficient evidence to support its indictment. In his memorandum in support of the motion, Chung argued that "he did not threaten [Suyama] because he never *communicated* any threat to the principal." Memorandum in support at 3 (emphasis in original). Put differently, Chung advanced the position that inasmuch as "a threat is a communicated intent to inflict harm[,] . . . *[t]he intent must be communicated,* either intentionally or in reckless disregard of the risk of terrorizing another person, *by the defendant.* It is not enough that the alleged threats be communicated by third or second level hearsay." *Id.* at 4 (emphasis in original). According to Chung, because any evidence of alleged threats would be hearsay and therefore inadmissible, the State could not possibly prove the material elements of the two counts of

terroristic threatening. *Id.*[6] Thus, Chung urged that permitting the State to proceed with its prosecution would violate his "right to [d]ue [p]rocess as well as his right to a fair trial." *Id.*

In its memorandum in opposition to Chung's motion to dismiss, the State countered with the argument that Chung "need not have directly threatened [Suyama] face to face" in order for the terroristic threatening charges to be sustained. Memorandum in opposition at 3. Rather, the State urged that Chung's communication to various teachers of his threats to shoot Suyama in reckless disregard of the risk that Suyama would in fact be terrorized, coupled with his simultaneous display of a loaded handgun and/or ammunition to some of them, was sufficient evidence to establish probable cause that Chung had committed the offense of terroristic threatening. *Id.* at 3–4.

---

[6] Chung appears to have abandoned his hearsay argument on appeal. *See Pele Defense Fund v. Paty*, 73 Haw. 578, 613, 837 P.2d 1247, 1268 (1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1277, 122 L. Ed. 2d 671 (1993) (issue on appeal deemed waived). Nevertheless, we note that Hawai'i Rules of Evidence (HRE) 801(3) defines "hearsay" to mean "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE 801(3) (1985). The relevance of Chung's statements to the teachers regarding his intention to shoot Suyama is wholly unrelated to their truth. It is not a material element of terroristic threatening that the defendant means what he says by his threats; it is the utterances themselves that are material. Thus, because Chung's statements to the teachers were not offered to prove the truth of the matters asserted in them, they are not hearsay. *See Shea v. City & County of Honolulu*, 67 Haw. 499, 505, 692 P.2d 1158, 1164 (1985) (citing McCormick, on Evidence § 249 (E. Cleary ed. 3d ed. (1984)). And even if they were hearsay, Chung's statements would appear to be admissions by a party–opponent and therefore admissible pursuant to HRE 803(a)(1) (1985).

The circuit court conducted a hearing on Chung's motion to dismiss on September 13 and October 2, 1991. On December 13, 1991, the court filed FOFs, COLs, and an order granting the motion. Significantly, the court concluded as a matter of law that "[s]ufficient evidence was presented [to the grand jury] to establish probable cause [to] support . . . the indictment." Nevertheless, the court ordered Counts I and II dismissed based on the following COLs:

4. [HRS §] 707–716, . . . which defines Terroristic Threatening in the First Degree, requires a direct or indirect threat, and requires that the conduct toward the subject of the threat must be reckless, not that the individual was reckless in disregarding the risk that the "threat" would be communicated to another person;

5. [Chung's] statements, that he watned [sic] to kill or shoot [Suyama], are protected by the First Amendment right of free speech and expression. [Chung] allegedly told others in the workplace that he had it in for [Suyama], but he never threatened [Suyama] directly despite an opportunity to do so, and he never asked his co–workers to convey the purported threats;

6. [HRS §] 707–716 . . . is unconstitutional as applied in Counts I and II of the indictment.

The State thereafter timely appealed the circuit court's order to this court.

## II. DISCUSSION

Reduced to its essence, the State's position on appeal is that the circuit court erred in dismissing Counts I and II of the indictment against Chung because the court (1)

fundamentally misconstrued the material elements of the offense of terroristic threatening and (2) misapprehended the relationship between the conduct proscribed by the terroristic threatening statutes and the kinds of speech and expression protected by the first amendment to the United States Constitution.[7]

Chung counters with a twofold argument. First, Chung urges that even if the circuit court erred in its construction of terroristic threatening, it nonetheless reached the right result, *see* **State v. Rodrigues**, 68 Haw. 124, 134, 706 P.2d 1293, 1300 (1985), because the evidence presented to the grand jury in support of Counts I and II of the indictment was insufficient to establish probable cause to believe that he "uttered his remarks in reckless disregard of the risk of terrorizing the person [*i.e.*, Suyama] who was the object of his remarks." Second, Chung contends that his statements to the teachers "do not fall within the ambit of statutorily prohibited conduct" and are therefore "protected under the free speech clause of the first amendment." For the reasons set forth below, Chung is mistaken in both respects.

### A. The Evidence Presented To The Grand Jury Was Sufficient To Support The Charges Of Terroristic Threatening As Set Forth In Counts I And II Of The Indictment.

"A grand jury indictment must be based on probable cause." **State v. Okumura**, 59 Haw. 549, 550, 584 P.2d 117, 119 (1978) (citation omitted). "Probable cause means such a state of facts as would lead a person of ordinary

---

[7] The first amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the

caution or prudence to believe and conscientiously entertain a strong suspicion of [the] guilt of the accused." *Id.* at 551, 584 P.2d at 119 (citation omitted); *cf. State v. Kuba*, 68 Haw. 184, 191, 706 P.2d 1305, 1310 (1985).

We note that in COL No. 2 of its December 13, 1991 order, the circuit court concluded as a matter of law that "[s]ufficient evidence was presented to establish probable cause in support of the indictment" against Chung. It is therefore apparent that, but for its interpretation of the terroristic threatening statutes, the circuit court would not have dismissed Counts I and II on constitutional grounds. Simply stated, the circuit court obviously construed HRS §§ 707–715 and 707–716 to require that, given the opportunity, Chung communicate his threats "directly" to Suyama or, in the alternative, that he communicate the threats "indirectly" through the teachers by expressly instructing that they be conveyed personally to Suyama.

In charging one form of terroristic threatening in the first degree in violation of HRS § 707–716(1)(a), Count I of the indictment alleges that (1) by word or conduct, Chung threatened Suyama, on more than one occasion for the same or a similar purpose, to cause Suyama bodily injury, (2) in reckless disregard of the risk of terrorizing Suyama. In charging a second form of the same offense in violation of HRS § 707–716(1)(c), Count II of the indictment alleges that (1) by word or conduct, Chung threatened a public servant (*i.e.*, Suyama, an administrator of the department of education) to cause

---

freedom of speech." Freedom of speech is "among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." *Gitlow v. New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 630, 69 L. Ed. 1138 (1925).

the public servant bodily injury, (2) in reckless disregard of the risk of terrorizing the public servant.

"HRS § 701–114[(1)(a) and (c) (1985)] requires proof beyond a reasonable doubt of each element of the offense, as well as '[t]he state of mind required to establish each element of the offense.'" *State v. Pinero*, 75 Haw. 282, 300, 859 P.2d 1369, 1378 (1993). Moreover, HRS § 702–204 (1985) provides in relevant part that "a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense." Finally, HRS § 702–207 (1985) provides that "[w]hen the definition of an offense specifies the state of mind sufficient for the commission of that offense, without distinguishing among the elements thereof, the specified state of mind shall apply to all elements of the offense, unless a contrary purpose plainly appears." Accordingly, by the plain language of the indictment, the requisite state of mind for each of the elements of the offenses charged in Counts I & II is "recklessness."[8]

---

[8] HRS § 702–206 (1985 and Supp. 1992) defines the states of mind recognized by the Hawai'i Penal Code and provides in relevant part:

**Definitions of states of mind.**

. . . .

(3) "Recklessly."

(a) A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

(b) A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist.

(c) A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

(d) A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of

"[I]n the case of terroristic threatening, [a] threat becomes a crime only when it is coupled[, *inter alia*,] with . . . a reckless disregard of the risk of terrorizing . . . ." *State v. Pukahi*, 70 Haw. 456, 458, 776 P.2d 392, 393 (1989). Moreover,

> [t]o be subject to criminal prosecution for terroristic threatening, . . . the threat must be conveyed to *either the person who is the object of the threat or to a third party*. "An uncommunicated threat, by definition, cannot threaten. . . . [A] person making threats does not commit a crime

the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law–abiding person would observe in the same situation.

HRS § 707–715 identifies the conduct proscribed by the offense of terroristic threatening, *inter alia*, as a threat to cause bodily injury to another person; the same statute identifies terrorization as the result of the conduct proscribed. With respect to the latter, the statute alternatively enumerates "intent" or "reckless disregard" (*i.e.*, "recklessness") as the requisite states of mind. Although the statute is silent as to the requisite state of mind applicable to the proscribed conduct, no purpose to apply different states of mind plainly appears. *See* HRS § 702–207 (1985).

In Counts I and II of the indictment, the State elected to charge recklessness as the requisite state of mind. Pursuant to HRS § 702–205 (1985), that state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense. Accordingly, the circuit court was "correct," *see Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992), in concluding in COL No. 4 that HRS § 707–716 "requires that the *conduct* toward the subject of the threat must be reckless" (emphasis added), but was "incorrect" in concluding that the section does "not [require] that the individual was reckless in disregarding the risk that the 'threat' would be communicated to another person" (*i.e.*, the "results of conduct"). *See id.*

until the threat is heard *by one other than the speaker.*"

***State v. Meyers***, 72 Haw. 591, 594, 825 P.2d 1062, 1064 (1992) (emphasis added and citation omitted). Finally, "[a]ctual terrorization is not a material element" of the offense of terroristic threatening. ***State v. Nakachi***, 7 Haw. App. 28, 32, 742 P.2d 388, 391 (1987). "The question is whether upon the evidence a reasonable [trier of fact] might fairly conclude that [the defendant] uttered his threats in reckless disregard of the risk of terrorizing [another person]." *Id.* at 32, 742 P.2d at 392 (citation omitted).

Based on the foregoing authority, we hold that the circuit court was incorrect, and therefore erred, when it concluded in COL Nos. 4 and 5 that HRS § 707–716 requires a threat to be communicated "direct[ly] or indirect[ly]" to the target thereof and that communication of the threat to a third party is insufficient as a matter of law to establish that terroristic threatening has been committed. Contrary to the circuit court's COLs, the key issue is whether Chung acted in reckless disregard of terrorizing Suyama, *i.e.*, whether he consciously disregarded a substantial and unjustifiable risk that his conduct would result in such terrorization, when he communicated his threats to the teachers.

Chung argues that despite the circuit court's error in interpreting HRS § 707–716, the order dismissing Counts I and II was correct and should not be overturned. *See Rodrigues, supra.* As noted above, Chung's argument is premised on the theory that there was insufficient evidence before the grand jury to establish probable cause to believe that his utterances created a

substantial and unjustifiable risk of being communicated to Suyama. We disagree.

The State adduced evidence before the grand jury that on more than one occasion Chung declared to four of his fellow teachers that he was going to shoot and/or kill Suyama. Contemporaneously with his various statements, Chung exhibited a .22 caliber semiautomatic pistol, or loaded clips of .22 caliber ammunition, or both, to three of the teachers and displayed the pistol to the fourth teacher on a separate occasion. The teachers were sufficiently concerned about Chung's state of mind and the risk posed by his threats that one of them (Langen) attempted obliquely to warn Suyama and the other three contacted the vice principal directly in order to pass on what Chung had told them. At the time of his arrest by the police, who had responded to a report submitted by Grabar and the vice principal, Chung was on the premises of PCHS without authorization and was found to be in possession of the semiautomatic pistol and loaded clips of ammunition. This evidence alone would have justified a finding of probable cause by the grand jury.

Significantly, however, the grand jury also heard Hueo's testimony that, after expressing a desire to shoot Suyama and exhibiting two clips of ammunition to Hueo, Chung inquired, "[W]hat are you going to do? You going to call the policeman?" The grand jury could legitimately have drawn two inferences from this testimony — namely, that because he recognized the potential for police involvement, Chung (1) consciously disregarded a substantial and unjustifiable risk that Suyama might also learn of the threat and be terrorized thereby, and (2) recognized that his disregard of the risk involved a gross deviation from the standard of conduct that a law–abiding person would observe in the same situation.

We hold that the evidence presented to the grand jury was sufficient to support the charges of terroristic threatening as set forth in Counts I and II of the indictment.

### B. Chung's Statements Were Not Protected By The Right Of Free Speech Accorded By The First Amendment To The United States Constitution.

As we have indicated, the circuit court, in dismissing Counts I and II of the indictment, concluded that (1) "[Chung's] statements, that he wanted to kill or shoot [Suyama], are protected by the First Amendment right of free speech and expression" (COL No. 5) and (2) HRS § 707–716 is therefore "unconstitutional as applied in . . . the indictment" (COL No. 6). The circuit court was "incorrect" on both scores.

The question before us is the same as that presented in *United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976), *cert. denied*, 429 U.S. 1022, 97 S. Ct. 639, 50 L. Ed. 2d 623 (1976), namely, "whether an unequivocal threat which has not ripened by any overt act into conduct in the nature of an attempt is nevertheless punishable under the First Amendment, even though it may additionally involve elements of expression." *Id.* at 1026. Whether speech is protected by the first amendment, as applied to the states through the due process clause of the fourteenth amendment, is a question of law which is freely reviewable on appeal. *Rankin v. McPherson*, 483 U.S. 378, 386 & n.9, 107 S. Ct. 2891, 2897–98 & n.9, 97 L. Ed. 2d 315, *reh'g denied*, 483 U.S. 1056, 108 S. Ct. 31, 97 L. Ed. 2d 819 (1987) (citations omitted).

The short answer to the question is found in *Rankin*: "[A] statement that amount[s] to a threat to kill . . .

would not be protected by the First Amendment[.]" 483 U.S. at 386–87, 107 S. Ct. at 2898. The rationale for the answer was aptly articulated by the court in *Kelner* as follows:

As a part of the Government's constitutional responsibility to insure domestic tranquility, it is properly concerned — in an era of ever-increasing acts of violence and terrorism, coupled with . . . opportunities to carry out threats of injury — with prohibiting as criminal conduct specific threats of physical injury to others . . . .

. . . .

[T]he word "threat" . . . exclude[s] statements which are, when taken in context, not "true threats" because they are conditional and made in jest [citing *Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399, 1401, 22 L. Ed. 2d 664 (1969)]. . . . [T]hreats punishable consistently with the First Amendment [are] only those which according to their language and context conveyed a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected "vehement, caustic [and] unpleasantly sharp attacks . . . ." [Citation omitted.]

. . . [P]roof of a "true threat" . . . focus[es] on threats which are so unambiguous and have such immediacy that they convincingly *express* an *intention* of being carried out. . . .

. . . So long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of

purpose and imminent prospect of execution, the statute may properly be applied.

534 F.2d at 1026–27 (emphasis in original).

On the record before us, we do not believe that any reasonable mind could conclude that Chung's statements did not rise to the level of "true threats." Chung repeatedly expressed to his colleagues the intention of shooting or killing Suyama. He did so at the school that Suyama administered. He displayed a handgun and/or ammunition when he uttered his threats. Finally, the threats were sufficiently unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an imminent prospect of execution; that this was the case is amply demonstrated by the facts that (1) Chung's statements were sufficiently alarming to impel his fellow teachers to transmit them to the vice principal (and, in one instance, obliquely to Suyama himself) and for the police to be notified, (2) Chung was in possession of the concealed handgun on the premises of PCHS at the time of his arrest, and (3) Chung's presence at PCHS was unauthorized at the time.

We hold that Chung's statements to his fellow teachers were not protected by the right of free speech guaranteed by the first amendment to the United States Constitution.

## III. CONCLUSION

Accordingly, we vacate the circuit court's December 13, 1991 order granting Chung's motion to dismiss Counts I and II of the indictment and remand for further proceedings consistent with this opinion. We further vacate

the circuit court's April 28, 1992 order dismissing Count III and similarly remand for further proceedings.

*James M. Anderson*, Deputy Prosecuting Attorney, for plaintiff–appellant.

*Peter Van Name Esser* (*Alvin T. Sasaki* on the briefs) for defendant–appellee.