922 P.2d 1032

STATE of Hawai'i, Plaintiff–Appellee,

v.

Dante PUDIQUET, Defendant–Appellant.

No. 17446.

Intermediate Court of Appeals of Hawai'i.

July 30, 1996.

Certiorari Denied Aug. 19, 1996.

Catherine H. Remigio, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

James H.S. Choi, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

Defendant–Appellant Dante Pudiquet (Defendant) appeals from a September 8, 1993 Judgment of the Circuit Court of the First Circuit convicting him, after a jury trial, of intimidating a witness in violation of Hawai'i

Revised Statutes (HRS) § 710–1071(1)(a) (1993).[1] Defendant challenges the trial court's (1) denial of his motions for judgment of acquittal, (2) refusal to admit evidence of complainant's prior convictions, and (3) instruction to the jury regarding the definition of the word "threat." We affirm.

## I. BACKGROUND

Robert Benson (Benson) owned and operated an antique shop. Benson recalled that Defendant visited his shop for the first time around September of 1989. On October 23, 1989, Defendant was in Benson's shop. After Defendant left, Benson noticed that a "jade snuff bottle" was missing from the display counter. Benson suspected that Defendant took the "snuff bottle" and reported the incident to the police "right away."

On November 16, 1989, Defendant returned to Benson's shop. Benson testified as follows regarding that encounter:

Q. [ (Plaintiff–Appellee State of Hawaii (the State)) ] Mr. Benson, let's move on to November 16, 1989 at approximately 2:00 in the afternoon. Did [Defendant] come to your shop that day?

A. Yes, sir.

Q. Was he alone?

A. He was with another individual known to me by the name of Carlton.

. . . .

Q. What did he [ (Defendant) ] tell you?

A. Something to the effect that "you fucker, I'm tired of this shit you saying I stole your snuff bottle."

Q. And what did you tell the Defendant?

A. I told him at that time I says [sic] that's fine. You can tell it to the police because they told me as soon as I spotted you any place to call 911, and they would have an officer over at that time to talk with him.

Q. Did you call 911?

A. Yes, I did.

Q. After you called 911, what did [Defendant] and the other male do?

A. They left my shop.

Q. How soon after you called?

A. As soon as I was on the phone talking . . . .

Honolulu Police Officer Daniel John Paperd (Officer Paperd) came to the shop approximately five minutes after Benson called 911. While Officer Paperd was at the shop, Benson received a telephone call from Defendant. Benson related that Defendant "was cussing and hollering that [Defendant] was going to sue me and [sic] for saying that he stole the snuff bottle." Benson handed the telephone to Officer Paperd, who testified as follows:

A. Mr. Benson answered the phone and told me it was the suspect, and he handed me the phone.

Q. [ (The State) ] Did the caller identify himself?

A. No, he refused to identify himself.

Q. What did you tell the caller?

A. I told the caller that there's a case pending against him. That there's a theft case pending against him, and that any contact that he makes with Mr. Benson could be inferred as intimidating a witness.

The caller then hung up.

About five minutes later, Benson received another call from Defendant.

Q. [ (The State) ] Now, after that call, did you receive another call?

A. [ (Benson) ] Yes, sir, I did.

Q. What time after the first call?

A. I don't know. Maybe five minutes after the first call.

Q. And who was that call from?

A. [Defendant].

. . . .

Q. After you told the Defendant that it was Benson, what did he say to you?

1. Defendant–Appellant Dante Pudiquet (Defendant) was also charged with theft in the second degree in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (1993). However, the circuit court declared a mistrial regarding this charge because the jury was not able to reach a verdict. On January 11, 1991, the circuit court approved the State of Hawai'i's motion to *nolle prosequi* the theft charge.

A. Then he started hollering, "you fucker, I'm going to get you" over and over.

Q. How many times did he tell you that?

A. I don't know. About three or four times I guess. He was cussing.

Q. What did you do with the phone after you received that call?

A. ... I gave the phone to the police officer.

Officer Paperd took the telephone and indicated that the voice on the phone was the same voice from the first telephone call and he told the caller "not to call back again."

Defendant admitted that he went to Benson's shop on November 16, 1989, to confront Benson about the accusation that he "stole" the "snuff bottle[.]" Defendant also confessed that he was angry and that he yelled and swore at Benson on the telephone. However, Defendant denied telling Benson, "I'm going to get you or I'm going to fix you[.]" Instead, Defendant explained that he "just told [Benson,] I'm going to sue you for telling lies about me which [sic] I took your snuff bottle which I didn't even see or taken [sic]. I told him in a very harsh voice. I was really mad at that time." Finally, Defendant indicated that he never threatened Benson's life nor did he "ever intend to intimidate [Benson] as a witness" because he "didn't even know [Benson] was going to be a witness."

On January 18, 1990, a complaint filed against Defendant charged him as follows:

On or about the 16th day of November, 1989, in the City and County of Honolulu, State of Hawaii [Hawai'i], [Defendant] did threaten ... Benson, a witness or a person said [Defendant] believed was about to be called as a witness in an official proceeding, with intent to influence the testimony of ... Benson, thereby committing the offense of Intimidating a Witness in violation of Section 710–1071(1)(a) of the Hawaii [Hawai'i] Revised Statutes.

On May 29, 1990, the State filed a motion in limine to exclude the use of trial evidence regarding Benson's criminal record. On August 1, 1990, prior to the start of Defendant's jury trial, the trial court orally granted the State's motion. At the close of the State's case, Defendant moved for judgment of acquittal. Defendant renewed this motion at the end of his case. The trial court denied both motions. The trial court, in denying Defendant's motion for judgment of acquittal made at the end of the defense's case, provided the following explanation:

THE COURT: Well, there are different versions to what occurred. The differing versions bring up a question of credibility. The issue of credibility, of course, is one for the jury to weigh.

The status of the evidence at this point is such that Defendant and reasonable minds may conclude the Defendant guilty beyond a reasonable doubt of [intimidating a witness]. Those words are words which ought to be evaluated by the jury as a factual matter. The motion is hereby denied.

On August 8, 1990, the jury returned its verdict finding Defendant guilty of intimidating a witness. On August 20, 1990, Defendant again moved for judgment of acquittal pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 26(c) [2] or in the alternative, for a new trial pursuant to HRPP Rule 33 [3] (Judgment of Acquittal/New Trial Motion). On September 11, 1990, the trial court issued its order denying Defendant's Judgment of Acquittal/New Trial Motion.

On September 8, 1993, a judgment was filed against Defendant.[4] On September 24,

---

2. Hawai'i Rules of Penal Procedure (HRPP) Rule 29(c) provides in relevant part: "(c) **Motion After Discharge of Jury.** If the jury returns a verdict of guilty ... a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10–day period."

3. HRPP Rule 33 provides in relevant part:

The court on motion of a defendant may grant a new trial to him if required in the interest of justice.... A motion for a new trial shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10–day period.

4. The trial court sentenced Defendant to a term of five years of incarceration. The delay of over three years between verdict and sentenc-

1993, Defendant filed his notice of appeal from the judgment.

## II. DISCUSSION

### A. *Motion for Judgment of Acquittal*

On appeal, Defendant argues that the trial court erred in denying his motions for judgment of acquittal which he made "following the State's evidence, the Defense's evidence and the jury's verdict."

It is well settled that when the defense presents evidence after a motion for judgment of acquittal made at the close of the prosecution's case, any error by the trial court in the denial of the motion is waived by the defense. *State v. Alston*, 75 Haw. 517, 526 n. 5, 865 P.2d 157, 163 n. 5 (1994); *State v. Rodrigues*, 6 Haw.App. 580, 581, 733 P.2d 1222, 1223 (1987); *State v. Molitoni*, 6 Haw. App. 77, 78, 711 P.2d 1303, 1305 (1985). Further, "[t]he standard by which the judge is to be guided in passing on a motion for judgment of acquittal is the same regardless of whether the motion is made before submission of the case to the jury or after the jury has returned a verdict." *State v. Summers*, 62 Haw. 325, 330, 614 P.2d 925, 929 (1980). Defendant presented evidence after his first motion for judgment of acquittal so we need not address that motion, and because the standard is the same for the remaining motions, we consider them together.

### 1. *Standard of Review*

The standard of review applied by the Hawai'i Supreme Court in ruling upon a motion for judgment of acquittal is the same standard applied by the trial court. *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995). The standard applied

"upon a motion for judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

*Id.* (quoting *State v. Alston*, 75 Haw. at 528, 865 P.2d at 164).

HRPP Rule 29(a) provides in relevant part that a "court on motion of defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." A motion for judgment of acquittal, therefore, "tests the sufficiency of the evidence" with regards to each element of the charged offense. *Alston*, 75 Haw. at 527, 865 P.2d at 163. When an appellate court reviews the sufficiency of the evidence, it examines

whether there was substantial evidence to support the conclusion of the trier of fact.... Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Pone*, 78 Hawai'i at 265, 892 P.2d at 458 (citations and internal quotations omitted).

### 2. *Elements of the Offense*

A prima facie case of intimidating a witness, which is a class C felony, is established where the prosecution presents evidence that the defendant (1) used force upon or a threat, (2) directed to a witness or a person he believes is about to be called as a witness in any official proceeding, (3) with the intent to influence the testimony of that witness or person. HRS § 710–1071(1)(a).[5]

(1) A person commits the offense of intimidating a witness if he uses force upon or a threat directed to a witness or a person he believes is about to be called as a witness in any official proceeding, with intent to:
    (a) Influence the testimony of that person;
    (b) Induce that person to avoid legal process summoning him to testify; or

---

ing, as admitted by Defendant when he addressed the court prior to being sentenced, was because Defendant "ran away[.]" HRPP Rule 32(a) requires the sentence to "be imposed without unreasonable delay." Because the delay is attributable to Defendant, the trial court did not violate this rule. *See State v. Kelly*, 20 Wash.App. 705, 582 P.2d 891, 893–94 (1978).

5. HRS § 710–1071 provides:

Defendant's specific argument in support of his motion for judgment of acquittal is that there was insufficient evidence to support a finding that (1) Defendant threatened Benson, (2) Defendant believed that Benson was about to be called as a witness in an official proceeding, and (3) Defendant intended to influence Benson's testimony as a witness. We examine each element of the offense to determine whether sufficient evidence was presented by the State to support a conviction.

### i. *Evidence of threat.*

■ " 'Threat' as used in [the intimidating a witness statute] means any threat proscribed by [HRS] section 707–764(1) [ (1993) ]." HRS § 710–1071(2). Thus, a person makes a threat sufficient to intimidate a witness "by threatening by word or conduct to . . . [c]ause bodily injury in the future to the person threatened. . . ." HRS § 707–764(1)(a). Defendant admitted to being angry, using profanity, and yelling at Benson on the telephone. Benson testified that Defendant repeatedly told him "I'm going to get you[.]" Such evidence is sufficient to support a conclusion by a person of reasonable caution that Defendant threatened Benson.

### ii. *Witness in any official proceeding.*

■ Defendant argues that there is insufficient evidence to show that Defendant believed that "Benson was about to be called as a witness for [an] official proceeding." Specifically, Defendant asserts that he cannot possess such a belief because there is no evidence to show that an "official proceeding" or an "official charge" existed against Defendant arising out of Benson's accusations. We disagree.

HRS § 710–1071(1) contains language similar to Model Penal Code (MPC) § 241.6 which deals with tampering of witnesses and informants. The MPC provides in relevant part that "[a] person commits an offense, if believing that an official proceeding or investigation is pending or about to be instituted,

(c) Induce that person to absent himself from an official proceeding to which he has been legally summoned.

he attempts to induce or otherwise cause a witness or informant to . . . testify or inform falsely[.]" MPC § 241.6(1)(a). The commentary explains that the conduct of tampering with a witness

> is prohibited only if the defendant acts "believing that an official proceeding or investigation is pending or about to be instituted." The purpose of this requirement is to enforce a fairly close relation between the conduct proscribed by this offense and the ultimate harm of obstruction of justice. The statute is phrased, however, to eliminate the purposeless quibbling invited by laws requiring that a proceeding or investigation be actually pending or in fact be contemplated by the authorities. In this manner, the statute focuses on the individual actor's culpability and not on external factors that may be irrelevant to the actor's aim in subverting the administration of justice. . . . Thus, the quoted language resolves this issue in the statement of the culpability requirement for the offense. *The prosecution must establish that the defendant held the specified belief but need not prove that a proceeding or investigation was in fact pending or about to be instituted. In assessing such belief, the word 'about' as it appears in this subsection should be construed more in the sense of probability than of temporal relation.* What is important is not that the actor believe that an official proceeding or investigation will begin within a certain span of time but rather that he [or she] recognize that his [or her] conduct threatens obstruction of justice.

(Emphasis added.) *Model Penal Code and Commentaries,* § 241.6, at 166–67 (1980) (footnote omitted).

■ Consistent with the MPC commentary, the commentary to HRS § 710–1071 explains that the statute's purpose is to protect the integrity of the judicial process from the harm caused by witness intimidation by

(2) "Threat" as used in this section means any threat proscribed by section 707–764(1).
(3) Intimidating a witness is a class C felony.

imposing severe sanctions for the offense.[6] It follows therefore, that the State need not show that a proceeding or investigation is actually pending in order to constitute an offense in violation of HRS § 710–1071. However, the State does need to prove, the "specified belief" required by the statute. Thus, the State needs to establish that Defendant used force or directed a threat to someone that Defendant "believes is about to be called as a witness[.]" HRS § 710–1071(1). The question we need to address, therefore, is whether there is sufficient evidence to show that Defendant believed that Benson was about to be called as a witness when he made his threats.

"While a defendant's state of mind can rarely be proved by direct evidence, 'the mind of an alleged offender may be read from his or her acts or conduct and the inferences fairly drawn from all of the circumstances.'" *State v. Leung,* 79 Hawai'i 538, 544, 904 P.2d 552, 558 (App.1995) (quoting *State v. Sadino,* 64 Haw. 427, 430, 642 P.2d 534, 537 (1982)) (brackets omitted). To determine what Defendant "believes" regarding Benson's potential status as a witness we examine all of the relevant circumstances surrounding the dispute in addition to looking at how Defendant acted.

Benson testified that after he discovered that the snuff bottle was missing on October 23, 1989, he called the police "right away" and told the police that he suspected Defendant to be the person responsible. Defendant admitted that he went to Benson's shop on November 16, 1989, to confront Benson "because [Benson is] going around telling people that [Defendant] stole [the] snuff bottle...." Moreover, Officer Paperd testified that he told Defendant on the telephone to not call back because "any contact that he makes with Mr. Benson could be inferred as intimidating a witness." A few minutes after this warning, Defendant called back on the telephone and, according to Benson's testimony, hollered at Benson, "I'm going to get you," about two or three times.

It can be fairly inferred from the above circumstances that Defendant was aware that he was a suspect in a theft investigation. However, a more direct indication of Defendant's belief is his act of calling Benson on the telephone soon after an explicit warning from a police officer that such conduct "could be inferred as intimidating a witness." As a result, we hold that there is sufficient evidence to support a conclusion by a person of reasonable caution that Defendant directed threats to a person whom Defendant believed was about to be called as a witness in an official proceeding.

### iii. *Intent to influence witness' testimony.*

■ Finally, Defendant maintains that the verbal exchange between him and Benson is not sufficient to show that he intended to influence Benson's testimony. As indicated above, Defendant's state of mind can be determined by examining his actions and from the inferences that can be made from all of the circumstances. We believe that it can be fairly inferred from Defendant's threatening statements towards Benson, during the second phone call, that Defendant intended to influence Benson's testimony as a witness. As a result, we also hold that there was sufficient evidence to support a conclusion by a reasonable person that Defendant intended to influence Benson's testimony.

### 3. *Motion Properly Denied*

Because we find that each element of the charged offense of intimidating a witness is sufficiently supported by credible evidence, we conclude that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Consequently, we hold that the trial court properly denied Defendant's oral motion for judgment of acquittal brought at the end of the presentation of defense's case and

---

**6.** The commentary to HRS § 710–1071 (1993) states in relevant part as follows:

> The potential for harm involved in witness intimidation is essentially similar to that involved in the offense of bribery of a witness, e.g., the undermining of the integrity of an extremely important part of the judicial process.... To some extent, it would seem that the section on criminal coercion might suffice to deal with witness intimidation, but since the intimidation of a witness carries the additional harm of interfering with an official proceeding, it seems appropriate to impose a more severe sanction for the present offense.

the judgment of acquittal motion brought after the jury verdict.

### B. *Motion for New Trial*

■ Defendant argues that the trial court erred in denying his motion for a new trial. "The denial of a motion for a new trial 'is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion.'" *State v. Ganal*, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (quoting *State v. Furutani*, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994)). "'The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'" *Id.* (quoting *Furutani*, 76 Hawai'i at 179, 873 P.2d at 58).

■ In support of his motion for a new trial, Defendant asserts that the trial court erred in granting the State's pre-trial motion in limine which prevented him from introducing evidence of Benson's theft and criminal conspiracy convictions for the purpose of impeaching his testimony as allowed by Hawai'i Rules of Evidence (HRE) Rule 609(a). The granting of a motion in limine will not be disturbed on review absent an abuse of discretion. *Lussier v. Mau–Van Development, Inc. I*, 4 Haw.App. 359, 392, 667 P.2d 804, 826 (1983).

HRE Rule 609(a) provides in relevant part that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty." The wording of the rule is designed to

> make it clear that [HRE] Rule 403's[7] discretionary balance governs admissibility under this rule. For purposes of this balance, the relevance of a prior conviction involving dishonesty will depend primarily upon the nature of the crime and the age of the conviction.

Commentary to HRE Rule 609. This kind of analysis is necessary to ensure that only

those "'convictions that are relevant to the issue of truth and veracity'" are admitted for the purposes of impeaching a witness' credibility. *Id.* (quoting *Asato v. Furtado*, 52 Haw. 284, 293, 474 P.2d 288, 295 (1970)).

■ On appeal, Defendant argues that the "[trial] court failed to consider whether the circumstances of [Benson's] prior convictions involved dishonesty" and instead refused to allow the prior conviction evidence by imposing "a per se rule that theft and conspiracy are not crimes involving dishonesty." Defendant also points out that the trial court "failed to consider the nature of the crime and the age of the conviction and determine the proper HRE Rule 403 balance."

At the pre-trial hearing for the State's motion in limine the following exchange occurred:

> [THE STATE]: My motion, [y]our Honor, goes to [Benson's] record. I believe about 1981 he was convicted of theft. Attempting to receive stolen property I believe was the exact charge. That was brought out at the preliminary hearing, and I'm seeking to exclude that at this time.
>
> THE COURT: [Defense Counsel], any problems with that relevance?
>
> [DEFENSE COUNSEL]: Under [HRE] Rule 609, it clearly states that we can bring in the witness's past criminal history.
>
> THE COURT: Doesn't say that. It's impeachment. You're talking about impeachment.
>
> [DEFENSE COUNSEL]: Yes. It's under the impeachment rule, [y]our Honor.
>
> THE COURT: I don't want convictions.
>
> [DEFENSE COUNSEL]: And he was convicted.
>
> . . . .
>
> THE COURT: It's conviction of a theft.
>
> [THE STATE]: Yes.

---

7. Hawai'i Rules of Evidence (HRE) Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[DEFENSE COUNSEL]: A little background on this theft.

THE COURT: I'm sorry. Wait. What kind of theft was it?

[THE STATE]: Attempting to receive stolen property. I believe Japanese swords in which he deals with.

THE COURT: When was that?

[THE STATE]: '81.

THE COURT: It's only convictions that you could use of a crime involving honesty, dishonesty, 609, [Defense counsel].

. . . .

[DEFENSE COUNSEL]: ... The Rule 609 clearly allows the use of a conviction for theft for crimes of dishonesty.

THE COURT: It doesn't say that. It doesn't state that theft is a crime of dishonesty.

. . . .

It's not coming out of the barn. I'm not going to allow it. It's just too collateral, number one.

Number two, it's too remote; and I should include theft is not a crime involving dishonesty. When it says and with crime involving dishonesty, they're referring to the order of false swearing.

It is evident from the above discussion that the trial court considered the factors necessary to determine whether Benson's prior conviction is admissible. The trial court asked when Benson was convicted, for what crime, and for facts underlying the conviction. The trial court then found that the prior conviction was "too collateral" and "too remote[.]" Therefore, contrary to Defendant's characterization of the trial court's ruling as being devoid of analysis and based

on a per se rule, we believe that the trial court balanced the relevant factors and concluded that evidence of Benson's prior convictions would be more prejudicial than probative.[8] Accordingly, we hold that the trial court properly granted the State's motion in limine barring admission of Benson's prior convictions, and, thus, properly denied Defendant's motion for new trial.

### C. *Jury Instruction*

■ Defendant's final point on appeal relates to the following instruction submitted to the jury over Defendant's objection:

> Threat means to threaten by word or conduct to; one, cause bodily injury in the future to the person threatened or to any other person or; two, cause damage to property; or three, do any other act which would not in itself substantially benefit the defendant but which is calculated to harm substantially some person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

Defendant asserts that the trial court erred in submitting this instruction defining threat "because it was vague and ambiguous and included threats by word or conduct to cause bodily injury *in the future*."[9]

■ " 'In reviewing jury instructions, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.' " *State v. Maelega,* 80 Hawai'i 172, 177, 907 P.2d 758, 762 (1995) (quoting *State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994)).

This particular instruction tracks the language of HRS § 707–764(1),[10] the extortion

---

8. Defendant also argues that Benson's prior conviction is admissible under HRE Rule 608(b) or HRE Rule 404(b). However, we need not consider Defendant's additional arguments because the trial court concluded that the evidence is prejudicial under HRE Rule 403.

9. In support of this argument, Defendant relies on *State v. Chung,* 75 Haw. 398, 862 P.2d 1063 (1993). The issue in *Chung* is whether a statement expressing a threat to kill another person constitutes speech protected by the first amendment. The Hawai'i Supreme Court answered in the negative and quoted a federal case which

articulated the rationale for its answer which included a discussion of the kind of "threat" the first amendment does not protect. *Id.* at 415–17, 862 P.2d at 1072–73. It is this discussion on threat that Defendant cites in support of his argument. Clearly, *Chung* deals with a different type of situation and is not applicable to this case.

10. HRS § 707–764(1) provides in relevant part:
A person commits extortion if he [or she] does any of the following:
(1) Obtains, or exerts control over, the property or services of another with intent to de-

statute. The intimidating a witness statute expressly defines "threat" to "mean[] any threat proscribed by HRS § 707–764(1)." HRS § 710–1071(2). As a result, we hold that the instruction accurately expressed the law and was not misleading.

### III.

For the reasons discussed above, we affirm the September 8, 1993 Judgment convicting Defendant of intimidating a witness.

prive him [or her] of the property or services by threatening by word or conduct to:
  (a) Cause bodily injury in the future to the person threatened or to any other person; or
  (b) Cause damage to property; or
  . . . .

(k) Do any other act which would not in itself substantially benefit the defendant but which is calculated to harm substantially some person with respect to his [or her] health, safety, business, calling, career, financial condition, reputation, or personal relationships[.]