**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **MICHAEL C. ALSTON**, Defendant–Appellant

NO. 16272

(CR. NO. 90–0028)

JANUARY 19, 1994

MOON, C.J., KLEIN, NAKAYAMA, AND RAMIL, JJ.
AND INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE BURNS, IN PLACE OF
LEVINSON, J., RECUSED

518

## OPINION OF THE COURT BY MOON, C.J.

Defendant–appellant Michael C. Alston appeals the judgments of conviction for one count of intimidating a witness and one count of terroristic threatening in the second degree entered against him after a jury trial in the First Circuit Court.

On appeal, Alston argues that (1) his conviction for terroristic threatening violated Hawai'i Revised Statutes (HRS) § 701–109 (1985) which prohibits multiple convictions based on the same conduct; and (2) certain statements made by him could not constitute "threats" sufficient to support a charge of terroristic threatening because they were not communicated to the victim. We

hold that HRS § 701–109 did not apply in this case, and that a threat need not be communicated to the victim to constitute a terroristic threatening, and thus affirm Alston's conviction.

## I. BACKGROUND

In early September 1989, Alston was involved in an "incident" in front of the Sizzler Restaurant in Waikiki (the Sizzler), witnessed by waitress Darla Calvin and upon which criminal charges were filed. Calvin was subpoenaed by the State of Hawai'i to appear in district court on November 20, 1989 and to testify against Alston in the criminal trial based on the incident.[1]

Pursuant to the subpoena, Calvin appeared at the district court on the date set for trial, at which time she was apparently informed that the defense had moved for and received a continuance. At the trial of the instant case, Calvin testified that before she left the district court courtroom, Alston, who was facing her, said, "someone didn't have to be here today. Someone's wasting their time." Calvin believed Alston's comment was directed to her. Frightened, Calvin approached the prosecutor and asked if she could provide her testimony by deposition rather than having to re–appear in court with Alston present. The prosecutor advised her that it would not be possible. When Calvin turned to leave, Alston allegedly "lurched forward as if to follow [her]," and again said, "[s]omeone is wasting their time," and then sat down.

---

[1] Counsel for Alston and the State agreed before trial that they would not elicit the specific facts comprising the "incident" because its only relevance resided in the fact that Calvin witnessed and was subpoenaed to testify as a witness in the criminal trial based on its occurrence.

Although only one date is specifically identified in the record, Alston allegedly confronted Calvin three separate times at the Sizzler over the next few weeks, culminating with his arrest and indictment in the present case.

According to Calvin, Alston first approached her after November 20, 1989, while she was waitressing at the Sizzler, and said in a menacing voice, "you got a problem with me being here?" She stepped back and said, "no." Alston again questioned, "[h]ave you got a problem with me being here?" and then left when she did not respond. Calvin described Alston's remarks as "threatening" based on his tone and because he "sort of jutted his chin out when he talked and sort of moved his chest forward."

Calvin testified that on the next occasion, Alston again confronted her in the Sizzler and asked, "you got something to say to me? Have you got a problem?" Once more, Alston departed when she did not respond. Calvin stated that even though Alston did not physically threaten her, she perceived his statements as "threatening."

On December 16, 1989, Alston returned to the Sizzler at approximately 6:45 a.m. Seated inside at separate tables were Calvin's parents and Honolulu Police Department officers Steven Ariola and Robert Medeiros.[2] Calvin, Ariola, and Medeiros testified to the following: Ariola and Medeiros were having coffee and filling out paper work after their midnight shift. Alston, who apparently could not see the officers from where he was standing, approached Calvin and pointed at her, demanding "you got something to say to me? If you've got something to

---

[2] Ariola and Medeiros had previously arrested Alston for the September 1989 incident.

say to me, say it to my face. I know people you don't want to know. I know someone who can make you disappear." Ariola and Medeiros overheard Alston's remarks. At that point, Calvin's father stood up and followed Alston outside with the two officers close behind. Ariola and Medeiros then stopped Alston outside the Sizzler.

Within a short time, another officer, Danny Gooch arrived, and Ariola went back inside to talk with Calvin. Medeiros and Gooch questioned Alston about the statements he made inside the Sizzler. In response, Alston pointed at Calvin (who could be seen inside the Sizzler through a plate glass window) and complained angrily that he was "tired of that bitch," and that if he were arrested, he would "go home and get his pistol and tie up this end once and for all." Further, when two women approached the scene, Alston told one of them, who was apparently his girlfriend, "to go home and get his gun and he would take care of that fat bitch once and for all." In making these statements to the officers, Alston never referenced Calvin specifically by name. Further, no testimony was presented that the officers or anyone else communicated Alston's statements to Calvin or that she otherwise became aware of them.

Alston disputed much of the State's case. He testified that although he saw Calvin in the district court on November 20, 1989, he did not speak to or approach her. However, Alston did admit commenting loudly to a friend, with the intention that Calvin would hear him, that "[he (Alston) didn't] even know why she's over here because she didn't see nothing." Thereafter, Alston saw Calvin twice at the Sizzler, but claimed that he did not have a conversation with her until December 16, 1989.

On December 16, Alston remembered entering the Sizzler as he often did to take a shortcut to Kalakaua

Avenue. On the way out, he stopped and turned around because he noticed Calvin pointing at him. Upon confronting her, Alston recalled,

> I asked her did she have a problem with me coming inside the Sizzler's because every time I come [sic] in there the past two times, she's pointed me out to people. You know, like that's the guy who got into the incident, you know, that she's a witness in . . . [and] [s]he said no, she don't have a problem with me being there[,] so I immediately started walking out, and one of the officers came and approached me and wanted to talk to me.

Alston flatly denied saying anything like "I can make you disappear."

Alston admitted that he was agitated at being detained by the officers outside the Sizzler on December 16 for what he believed to be no good reason. He told Medeiros that "if he arrested me for this BS . . . when I get out he's going to have a reason to arrest me[,] [but] I didn't say I was going to shoot the girl. I was just basically just talking [sic] because I was upset, you know." Alston admitted claiming to have had a gun and indicated that he told someone to "get my gun. I'm going to go off when I get out of jail." However, Alston said he did not really have a gun, and although he could see Calvin through the window, he denied pointing at her or saying that he would use the gun on anyone.

Alston was arrested and later indicted on two counts as follows:

> **Count I**: On or about the 16th day of December, 1989, in the City and County of Honolulu, State of Hawai'i, MICHAEL C. ALSTON did threaten Darla Calvin, a witness or person said

MICHAEL C. ALSTON believed was about to be called as a witness in an official proceeding, with the intent to induce that person to absent herself from an official proceeding to which she had been legally summoned, thereby committing the offense of Intimidating a Witness in violation of Section 710–1071(1)(c) of the Hawai'i Revised Statutes.

**Count II**: On or about the 20th day of November, 1989, to and including the 16th day of December, 1989, in the City and County of Honolulu, State of Hawai'i, MICHAEL C. ALSTON threatened, by word or conduct to cause bodily injury to Darla Calvin, by threatening Darla Calvin on more than one occasion for the same or similar purpose, in reckless disregard of the risk of terrorizing said Darla Calvin, thereby committing the offense of Terroristic Threatening in the First Degree in violation of Section 707–716(1)(A) of the Hawai'i Revised Statutes.

Trial commenced on April 6, 1992. At three different stages in the trial, Alston moved for a judgment of acquittal on counts I and/or II. The circuit court denied the motion each time. Further, the circuit court overruled Alston's objection that his statements made outside of the Sizzler on December 16, 1989 were substantially more prejudicial than probative.

On April 9, 1992, the jury returned unanimous verdicts finding Alston guilty of intimidating a witness and terroristic threatening in the second degree, in violation of HRS § 707–717.[3] The circuit court sentenced Alston to

___

[3] With regard to count II, the jury was also instructed on the lesser included offense of terroristic threatening in the second degree which,

five years probation for count I and one year probation for count II, which sentences were to run concurrently, with one year of incarceration as a special condition of probation. Judgment was entered on June 26, 1992, and Alston timely filed a notice of appeal on July 8, 1992.

## II. DISCUSSION
### A. Alston's Motions for Judgment of Acquittal

At trial, Alston moved for a judgment of acquittal on the terroristic threatening count at the close of: (1) the State's opening statement; (2) the State's case; and (3) his own case.[4] Although all three motions were identical, this court need only consider the merits of Alston's third motion made after the close of his case.[5]

Alston's motion for a judgment of acquittal was premised on the contention that he was improperly charged with two offenses based on the same conduct and intent. Alston maintained that the offense of terroristic threatening was necessarily included within the offense of intimidating a witness. Therefore, Alston submitted that he could not be convicted of both offenses because such

---

*inter alia*, applies to terroristic threatenings that are committed only on one occasion. *See* HRS § 707–717 (1985).

[4] Alston's second and third motions for a judgment of acquittal also encompassed the intimidating a witness count. However, Alston does not challenge the trial court's denial of his motions with respect to that offense in this appeal.

[5] Although not raised by the State, Alston waived his right to challenge the trial court's denial of his motions for a judgment of acquittal made after the State's opening argument and at the close of the State's case when he thereafter presented evidence in his defense. *State v. Yamashiro*, 8 Haw. App. 595, 597 n.2, 817 P.2d 123, 125 n.2 (1991) (citation omitted).

conviction was barred by HRS § 701–109.[6] However, the question whether Alston could be separately convicted of each offense could not have been properly addressed by the trial court via a motion for judgment of acquittal because a motion for a judgment of acquittal tests the sufficiency of the evidence. Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a); *see also* 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 461, at 637–38 (2d ed. 1982) (footnote omitted).

HRPP 29(a) provides in relevant part:

> (a) **Motion Before Submission to Jury.** ... The court on motion of defendant or of its own motion shall order the entry of a judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed *if the evidence is insufficient to sustain a conviction* of such offense or offenses. ...

Alston did not allege at trial nor does he allege on appeal that the State's evidence against him was deficient. On the contrary, Alston argues that he could not have intimidated a witness under HRS § 710–1071 without necessarily having committed a terroristic threatening under HRS § 707–715. Because Alston does not challenge his conviction for intimidating a witness in this appeal and because he contends that the offense of terroristic threatening is included in the offense of intimidating a witness, he impliedly concedes that the prosecution's evidence was sufficient to convict him of terroristic

---

[6] Under HRS § 701–109(1)(a), a defendant may not be convicted of more than one offense if "[o]ne offense is included in the other." Under HRS § 701–109(4)(a), an offense is so included when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

threatening. Indeed, our review of the evidence reveals this to be the case.

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the jury, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Nakoa*, 72 Haw. 360, 363, 817 P.2d 1060, 1062 (1991) (citation omitted); *see also State v. Brighter*, 62 Haw. 25, 31, 608 P.2d 855, 859 (1980). An appellate court employs this same standard of review. *See Nakoa*, 72 Haw. 360, 817 P.2d 1060; *State v. Yamashiro*, 8 Haw. App. 595, 597, 817 P.2d 123, 125 (1991).

A prima facie case of terroristic threatening in the first degree is established where the prosecution presents evidence that the defendant (1) threatened, by word or conduct, to cause bodily injury to another (2) on more than one occasion for the same or similar purpose and (3) with the intent to terrorize, or in reckless disregard of the risk of terrorizing, the person. HRS §§ 707–715, 707–716;[7] *see also State v. Nakachi*, 7 Haw. App. 28, 32, 742 P.2d 388, 391 (1987).

---

[7] HRS § 707–715 (1985) defines "terroristic threatening" in relevant part as follows:

> A person commits the offense of terroristic threatening if he threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony . . . (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

HRS § 707–716 (1985) provides in relevant part:

> A person commits the offense of terroristic threatening in the first degree if he commits terroristic threatening . . . (a) By threatening another person on more than one occasion for the same or similar purpose[.]

Based on our review of the evidence presented by the prosecution in this case, we believe the jury could have concluded beyond a reasonable doubt that: (1) Alston threatened Calvin with bodily injury; (2) he did so at the district court on November 20, 1989 and thereafter on three separate occasions at the Sizzler — each time for the purpose of discouraging Calvin from testifying against him; and (3) he did so in reckless disregard of the risk of terrorizing Calvin.[8] We therefore conclude that the trial court properly denied Alston's motion for judgment of acquittal.

## B. **Multiple Convictions and Lesser Included Offenses**

Alston's failure to utilize the appropriate procedure in the trial court to resolve the issue of whether HRS § 701–109 applied to bar his convictions does not foreclose our consideration of the issue. This court *sua sponte* may notice plain errors affecting substantial rights. *State v. Pinero*, 75 Haw. 282, 292, 859 P.2d 1369, 1374 (1993); *State v. Grindles*, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989); HRAP 28(b)(4); *see also* HRPP 52(b). We have recognized that such error occurs when the trial court's instructions to the jury fail to preclude the return of guilty verdicts which violate the statutory mandate of HRS § 701–109. *See Briones v. State*, 74 Haw. 442, 468 n.19, 848 P.2d 966, 978 n.19 (1993), *id.* at 473, 848 P.2d at 981 (Levinson, J., concurring); *see also State v. Reyes*, 5 Haw. App. 651, 658, 706 P.2d 1326, 1330, *reconsideration denied*, 5 Haw. App. 683, 753 P.2d 253 (1985). Neither party in this case requested, nor did the trial court give, an

---

[8] In Count II of the indictment (terroristic threatening), the prosecution elected to charge recklessness as the requisite state of mind.

instruction based on HRS § 701–109. If we should determine that Alston's conviction of both counts I and II is barred by HRS § 701–109, failure to instruct the jury accordingly would be considered plain error. We will therefore examine the issue of whether Alston's conviction is barred by HRS § 701–109.

HRS § 701–109 provides, in relevant part:

> When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:
>
> (a) One offense is included in the other[.]

Pursuant to HRS § 701–109(4)(a), "an offense is so included when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"

Alston maintains that "[t]he clear import of [HRS] § 701–109 is to prohibit multiple convictions where [d]efendant's action constitutes a continuing course of conduct which was to culminate in the intended result." *See* HRS § 701–109(1)(e).[9] Alston essentially argues that

---

[9] HRS § 701–109(1) provides in relevant part:

> When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:
>
> . . . .
>
> (e) The offense is defined as a continuing course of conduct and the defendant's course was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

*all* of the threats allegedly made by him constitute a single, continuing course of conduct with one ultimate goal — inducing Calvin not to testify against him.

We note, however, that in the two count indictment against Alston, the prosecution specifically limited count I (intimidating a witness) to the events of December 16, 1989, while count II (terroristic threatening) was based expressly on separate events encompassing "the 20th day of November, 1989, to and including the 16th day of December, 1989." December 16, 1989 is the only date common to both counts; therefore, any conduct undertaken by Alston *before* December 16, could not be the "same conduct" for which he was charged with intimidating a witness. Consequently, although not explicitly set forth, we believe Alston's only tenable argument with respect to the multiple conviction issue is that his multiple statements made on December 16, 1989 constituted a single course of conduct, and therefore, his convictions are barred by HRS § 701–109.

Whether a course of conduct gives rise to more than one crime depends in part on the intent and objective of the defendant. The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense. *State v. Castro*, 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988) (citations omitted). All factual issues involved in this determination must be decided by the trier of fact. *State v. Horn*, 8 Haw. App. 167, 169, 796 P.2d 503, 504 (1990).

Terroristic threatening requires that the defendant threatened another with the specific "intent to terrorize,

or in reckless disregard of the risk of terrorizing" that person. HRS § 707–715.[10] Intimidating a witness requires that the defendant threatened another with the specific intent to "induce that person to absent himself [or herself] from an official proceeding to which he [or she] has been legally summoned." HRS § 710–1071(1)(c) (1985). Clearly, these two offenses have appreciably different intent elements. The question whether Alston acted with two distinct intents on December 16, 1989 was a question of fact which the jury, so instructed, answered affirmatively.

Based on our review of the record, we believe there is substantial evidence to support the jury's conclusion that Alston acted with two distinct intents. The jury reasonably could have found that Alston acted initially with the intent to intimidate Calvin from appearing as a witness against him when he made the threats inside the Sizzler, and later, angered and upset at being stopped outside by the police officers, exhibited a "reckless disregard of the risk of terrorizing" Calvin by pointing at her and threatening to return with a pistol and "take care of that fat bitch once and for all."

Alston, however, counters with the argument that intent to terrorize is necessarily included in the intent to intimidate a witness because "[t]he threatened bodily injury against Calvin was . . . intended to accomplish the commission of intimidation."

This court has held that an offense is a lesser included offense of another if it "satisf[ies] the requirements set forth in HRS § 701–109(4) which codifies the common law doctrine of lesser included offenses[.]" *State v.*

---

[10] *See supra* note 7.

*Burdett*, 70 Haw. 85, 87, 762 P.2d 164, 165 (1988). HRS § 701–109(4) provides:

> A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
>
> (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

HRS § 701–109(4) (1985). Each subsection under HRS § 701–109(4) requires alternative analyses.[11] *Burdett*, 70 Haw. at 87, 762 P.2d at 166; *State v. Woicek*, 63 Haw. 548, 550 n.5, 632 P.2d 654, 656 n.5 (1981).

Under subsection (a), "an offense is included if it is impossible to commit the greater without also committing the lesser." *Burdett*, 70 Haw. at 87–88, 762 P.2d at 162 (citations omitted). In making this comparison, the degree of culpability, the legislative statutory scheme, and the end result may be considered. *Id.* at 88, 762 at 166 (citation omitted).

---

[11] HRS § 701–109(4)(b) regarding attempts is not applicable here and will therefore not be included in the discussion.

Regarding the degree of culpability, the rule is that the lesser included offense cannot have a mental state greater than or *different from* that which is required for the charged offense. *Id.* (citations omitted). Although terroristic threatening can be committed with a lesser mental state than intimidating a witness — recklessness may suffice for the former while intent is required for the latter — the two offenses have "different" *mens rea* requirements. As discussed previously, intimidating a witness requires the intent to cause another's absence from an official proceeding, and terroristic threatening requires the intent to cause, or recklessness in causing, terror.[12] *See generally* **State v. Freeman**, 70 Haw. 434, 438, 774 P.2d 888, 891 (1989) (although both fraudulent use of credit card and second degree theft require intentional conduct, each has "different" mental state requirement).

Likewise, the two offenses at issue are treated differently in the legislative scheme. The prosecution correctly notes that terroristic threatening is classified as an offense against the *person* in HRS chapter 707, while intimidating a witness is classified as an offense against *public administration* in HRS chapter 710. In *Burdett*, this court noted that classification of two crimes under different chapters of the Penal Code indicates that the legislature intended to protect different societal interests

---

[12] The *mens rea* requirements of terroristic threatening *in the first degree* and the offense of intimidating a witness, under the circumstances of this case, arguably are similar. In other words, where the purpose of the threat was to induce one's absence from an official proceeding, the *mens rea* requirement of each offense may overlap. That question, however, need not be addressed to properly resolve the issues raised in this appeal.

with the respective statutes and that one crime would not be the lesser included of the other. ***Burdett***, 70 Haw. at 89, 762 P.2d at 167 (citation omitted).

Finally, a lesser included offense should produce the same end result as the greater charged offense. *Id.* Here, the end results of the crimes at issue are distinct. Theoretically, terroristic threatening produces a psychological injury to the person threatened. *Id.* On the other hand, intimidating a witness results in the absence of the person threatened from an official proceeding to which he or she was legally summoned. Stated differently in the context of the legislative classification, terroristic threatening produces a personal injury while intimidating a witness impairs administration of the public function. Therefore, a person can commit the offense of intimidating a witness without necessarily committing a terroristic threatening.

Moreover, in *State v. Pukahi*, 70 Haw. 456, 776 P.2d 392 (1989), we rejected an argument similar to Alston's. In *Pukahi*, appellant attempted to convince this court that the mental state for terroristic threatening was necessarily included within that for extortion. In considering appellant's argument, we stated:

> Appellant's argument assumes that a threat of bodily injury, uttered for the purpose of causing someone to yield control of property or services, necessarily is also intended to terrorize, or is made in reckless disregard of the risk of terrorizing the recipient. That is not necessarily so. A jury could believe, in this case, that the threat, by appellant, to give the recipient black eyes, unless he paid a sum of money within a specified time, was made with the intent to require the recipient

> to pay over the money, and yet a jury could very well believe that such a threat was not made with the intent to terrorize, or even in reckless disregard of the risk of terrorizing the recipient.

*Id.* at 458, 776 P.2d at 393. Similarly, as previously noted, a person could threaten another for the purpose of inducing that person's absence from an official proceeding without necessarily intending to terrorize, or recklessly disregarding the risk of terrorizing, the person.

Therefore, we hold that terroristic threatening is not a lesser included offense of intimidating a witness within the meaning of HRS § 701–109(4)(a).

However, conviction of both offenses may be precluded under HRS § 701–109(4)(c). Under subsection (c), an offense is included if "[i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission."

"Subsection (c) differs from (a) in that there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same." *State v. Freeman*, 70 Haw. 434, 440, 774 P.2d 888, 892 (1989) (citing Commentary to HRS § 701–109). Under a subsection (c) analysis, the following factors are considered: (1) the degree of culpability; (2) the degree or risk of injury; and (3) the end result. *Burdett*, 70 Haw. at 90, 762 P.2d at 167 (citation omitted). As discussed above, intimidating a witness and terroristic threatening differ in both the required intents and the end results. Moreover, subsection (c) requires an injury "to the *same* person . . . or public interest." However, as also discussed above, each offense involves an injury or risk of injury to different

interests — terroristic threatening produces an injury to the person and intimidating a witness affects the public function. Therefore, we further hold that HRS § 701–109(4)(c) does not bar the multiple convictions in this case.

## C. Threats Not Communicated to Victim

Alston's second contention on appeal is that Hawai'i Rules of Evidence (HRE) 403[13] and 404(b)[14] dictate the exclusion of his December 16, 1989 statements (challenged statements) made outside the Sizzler because "the sole and only purpose of the State's seeking to admit the evidence [was] to show [Alston's] propensity for committing bad and violent acts, matters which are clearly prejudicially inadmissible." In support of this conclusion, Alston argues that

> [i]n the case at bar, the evidence sought to be admitted was a statement which could not have threatened the complaining witness [Calvin] since she did not overhear it and it was not communicated to her at any time.[15] Therefore, the probative value of the information was negligible at

---

[13] HRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[14] HRE 404(b) provides:

. Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. . . .

[15] We note that at trial, the prosecution indicated to the court that Calvin had become aware of the challenged statements at some point,

best. However, the jury may well have been heavily prejudice[d] by the information and statements concerning a gun, therefore the evidence on balance should not have been admitted.

Based on this foregoing argument, we believe Alston essentially disputes the relevancy of the challenged statements. *See* HRE 401.[16]

"[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue." ***Kealoha v. County of Hawai'i***, 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993). Trial court determinations made pursuant to HRE 401 are reviewed under the right/wrong standard of review. *Id.* On the other hand, decisions made under evidentiary rules requiring a "judgment call" are reviewed for abuse of discretion. *Id.* at 319–20, 844 P.2d at 676. Specifically, the abuse of discretion standard applies to a trial court's resolution of a HRE 403 objection. *Id.* at 323, 844 P.2d at 677. Likewise, HRE 404 "represents a particularized application of the principle of [HRE] 403" (*see* Commentary to HRE 404), and we will employ the same abuse of discretion standard of review. An abuse of discretion occurs where the trial court has "clearly exceeded the

---

although the prosecution did not know exactly how or when. Regardless of whether Calvin learned of the challenged statements, our discussion in this section would be the same.

[16] HRE 401 provides:

**Definition of "relevant evidence."** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted).

The dispositive issue presented here is whether a terroristic threatening may occur if the threat is never communicated to the person against whom the threat was made. In essence, Alston submits that "threaten" means directly communicating a threat to the victim. We disagree.

In *State v. Meyers*, 72 Haw. 591, 825 P.2d 1062 (1992), we stated:

> To "threaten" is to "utter a threat against." RAN-DOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1975 (1987). A "threat," in turn, is defined as "[a] communicated intent to inflict physical or other harm on any person or property." BLACK'S LAW DICTIONARY 1480 (6th ed. 1990). To be subject to criminal prosecution for terroristic threatening, therefore, the threat must be conveyed to either the person who is the object of the threat *or to a third party*. "An uncommunicated threat, by definition, cannot threaten . . . . [A] person making threats does not commit a crime *until the threat is heard by one other than the speaker*." *United States v. Baish*, 460 A.2d 38, 42 (D.C. 1983).

*State v. Meyers*, 72 Haw. 591, 594, 825 P.2d 1062, 1064 (1992) (emphasis added).

Alston does not dispute that the challenged statements were threats. Clearly, Alston's statements that he

would "get his gun" and "take care of that fat bitch once and for all" expressed an intent to inflict physical harm. The evidence indicated that Alston's threats were communicated to third parties, namely, officers Medeiros and Gooch. Therefore, the challenged statements were evidence that Alston had threatened Calvin.

We believe Alston's argument also includes the premise that the challenged statements could not have constituted a terroristic threatening because they did not result in terrorizing Calvin. However, the offense of terroristic threatening does not require that the person to whom the threats are directed actually be terrorized by the threats. *State v. Chung*, 75 Haw. 398, 413, 862 P.2d 1063, 1071 (1993) (citing *State v. Nakachi*, 7 Haw. App. 28, 32, 742 P.2d 388, 391 (1987)). The only question is whether a reasonable jury might conclude from the evidence presented that the threat, communicated to a third party, was made "in reckless disregard of the risk of terrorizing" another person. *Id.*; HRS § 707–715. That question must be resolved in light of the circumstances in each case.

In *Chung*, we recognized that

> HRS § 707–715 identifies the *conduct* proscribed by the offense of terroristic threatening, *inter alia*, as a threat to cause bodily injury to another person; the same statute identifies terrorization as the *result* of the conduct proscribed. With respect to the latter, the statute alternatively enumerates "intent" or "reckless disregard" (*i.e.*, "recklessness") as the requisite states of mind. Although the statute is silent as to the requisite state of mind applicable to the proscribed conduct, no purpose to apply different states of mind plainly appears.

*Chung*, 75 Haw. at 411–12 n.8, 862 P.2d at 1070–71 n.8 (emphasis added).  HRS § 702–206(3) (1985 and Supp. 1992) provides:

   (a)   A person acts recklessly with respect to his *conduct* when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of  the specified nature.

   . . . .

   (c)   A person acts recklessly with respect to a *result* of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

   (d)   A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law–abiding person would observe in the same situation.

(Emphasis added.)   Thus, we must first determine whether Alston "consciously disregard[ed] a substantial and unjustifiable risk that [his] conduct" would "threaten" Calvin.  Second, we must examine whether the risk that Alston's conduct would "result" in terrorizing Calvin was "substantial and unjustifiable."

   The State's evidence showed that: (1) Calvin had witnessed Alston in an "incident" for which he was criminally charged; (2) Calvin was subpoenaed to testify against him; (3) Alston approached Calvin several times in a confrontational manner, and on December 16, 1989, warned her that she could "disappear;" and (4) on December 16, 1989, while Alston stood outside the Sizzler, he pointed at

Calvin (who was standing inside the Sizzler and could be seen through a plate glass window) and allegedly stated to two police officers that he (Alston) would get a pistol and take care of Calvin "once and for all." Based on the State's evidence, there is no doubt that a reasonable jury could have fairly concluded beyond a reasonable doubt that (1) Alston disregarded risks that his conduct would threaten and terrorize Calvin; and (2) "considering the nature and purpose of [Alston's] conduct and the circumstances known to him, the disregard of the risk[s] involve[d] a gross deviation from the standard of conduct that a law—abiding person would observe in the same situation." The offense was thus complete upon Alston's utterance of the threats to the police officers.

Accordingly, we hold that the challenged statements were relevant as direct evidence of a material element of terroristic threatening. As proof of an ultimate issue in the case, the circuit court had no discretion to exclude the evidence. *See* 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5239, at 450–51; *see also Kaeo v. Davis*, 68 Haw. 447, 454, 719 P.2d 387, 392 (1986) ("evidence with a capacity for unfair prejudice cannot be equated with testimony simply adverse to the opposing party; for evidence is only material if it is prejudicial in some relevant respect") (citation omitted). Further, as direct evidence of the charged offense, *a fortiori*, the challenged statements did not constitute "other" crimes, wrongs, or acts with which HRE 404(b) is concerned. *See State v. Renon*, 73 Haw. 23, 33, 828 P.2d 1266, 1271, *reconsideration denied*, 73 Haw. 625, 858 P.2d 734 (1992) (citation omitted). For these reasons, we hold that the trial court did not abuse its discretion in admitting the challenged statements.

## III. CONCLUSION

Based on the foregoing, we affirm Alston's judgments of conviction for one count of intimidating a witness and one count of terroristic threatening in the second degree.

On the briefs:

*Caroline M. Mee*, Deputy Prosecuting Attorney, for plaintiff–appellee.

*William A. Harrison*, for defendant–appellant.