**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000940
30-JUN-2020
07:51 AM**

NO. CAAP-18-0000940

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI,
Plaintiff-Appellee,
v.
AIVEN ANGEI,
Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-18-0000163)

SUMMARY DISPOSITION ORDER
(By: Chan, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Aiven Angei (Angei) appeals from the November 20, 2018 Judgment of Conviction and Sentence, entered by the Circuit Court of the First Circuit (circuit court).[1] On February 1, 2018, Plaintiff-Appellee State of Hawaiʻi (State) charged Angei by indictment with Murder in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 707-701.5 (2014). After a jury trial, Angei was found guilty of the lesser included offense of Manslaughter based on reckless conduct (Reckless Manslaughter), in violation of HRS § 707-702(1)(a) (2014). The circuit court then sentenced Angei to twenty years of imprisonment.

Angei argues that the circuit court erred in: (1)

---

[1] The Honorable Rom A. Trader presided.

denying his request to instruct the jury on the lesser included offense of Reckless Endangering in the Second Degree, HRS § 707-714 (2014); and (2) denying Angei's motion for judgment of acquittal.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Angei's points of error as follows and affirm.

## A.    Jury Instructions

"[W]hen jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." State v. Flores, 131 Hawaiʻi 43, 57-58, 314 P.3d 120, 134-35 (2013) (citations and quotation marks omitted). "The failure to instruct the jury on a lesser included offense for which the evidence provides a rational basis warrants vacation of the defendant's conviction." Id. at 58, 314 P.3d at 135.

We first determine whether Reckless Endangering in the Second Degree is a lesser included offense of Murder in the Second Degree. See id. at 52-53, 314 P.3d at 129-30. An offense is included in another charged offense if it meets one of the requirements set forth in HRS § 701-109(4). Relevant to this appeal, HRS § 701-109(4)(c) (2014) provides:

> (4)    A defendant may be convicted of an offense included in an offense charged in the indictment or the information.  An offense is so included when:
>
> . . .
>
> (c)    It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

"[S]ubsection (c) 'expands the doctrine of lesser included offenses to include crimes that require a less serious injury or

risk of injury.'" State v. Kaeo, 132 Hawaiʻi 451, 461, 323 P.3d 95, 105 (2014) (ellipsis omitted) (quoting State v. Burdett, 70 Haw. 85, 90, 762 P.2d 164, 167 (1988)). "The degree of culpability, degree of injury or risk of injury and the end result are some of the factors considered in determining whether an offense is included in another under HRS § 701-109(4)(c)." Id. (internal quotation marks omitted) (quoting State v. Kupau, 63 Haw. 1, 7, 620 P.2d 250, 254 (1980)).

First, as for the degree of culpability, "the lesser included offense cannot have a mental state greater than or different from that which is required for the charged offense." State v. Alston, 75 Haw. 517, 534, 865 P.2d 157, 166 (1994) (emphasis omitted). Murder in the Second Degree requires the state of mind of "intentionally or knowingly caus[ing] the death of another person." HRS § 707-701.5. Reckless Endangering in the Second Degree requires the state of mind of "recklessly plac[ing] another person in danger of death or serious bodily injury." HRS § 707-714(1)(a). Because recklessness is a lesser mental state than intent or knowledge, Reckless Endangering in the Second Degree does not have a mental state that is greater than that required for Murder in the Second Degree. See Commentary to HRS § 702-208 (2014) ("[I]ntent, knowledge, recklessness, and negligence are in a descending order of culpability[.]"). The two offenses also do not require "different" mental state requirements. See Alston, 75 Haw. at 534, 865 P.2d at 166 (holding that terroristic threatening and intimidating a witness have different mental state requirements because "intimidating a witness requires the intent to cause another's absence from an official proceeding, and terroristic threatening requires the intent to cause, or recklessness in causing, terror" (emphases added)).

Second, as to the degree or risk of injury, Murder in the Second Degree under HRS § 707-701.5 requires "caus[ing] the death of another person," (emphasis added) while Reckless

3

Endangering in the Second Degree under HRS § 707-714(1)(a) requires "plac[ing] another person <u>in danger of death or serious bodily injury</u>" (emphasis added).  Committing an act that places another individual in danger of death or "bodily injury which creates a substantial risk of death," HRS § 707-700 (2014), is a less serious risk of injury than the actual causing of death, for one cannot cause the death of another without first placing the other in danger of death.  <u>See</u> <u>Kaeo</u>, 132 Hawai'i at 462, 323 P.3d at 106.

Third, we consider the end results of both offenses.  Our case law indicates that HRS § 701-109(4)(c) applies where "there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same."  <u>State v. Kinnane</u>, 79 Hawai'i 46, 55, 897 P.2d 973, 982 (1995) (quoting <u>Alston</u>, 75 Haw. at 536, 865 P.2d at 167).  However, the supreme court has expressly held that the "end result" factor is not dispositive and is simply a factor to be considered.  <u>Kaeo</u>, 132 Hawai'i at 464, 323 P.3d at 108.

Strictly speaking, the end results of Murder in the Second Degree and Reckless Endangering in the Second Degree are not the same.  Murder in the Second Degree results in the death of another while Reckless Endangering in the Second Degree places the victim in jeopardy of death or serious bodily injury but does not necessarily result in the death of the victim.  Reckless Endangering in the Second Degree need not always result in bodily injury to the victim; all that is required is that the victim be placed <u>in danger</u> of death or serious bodily injury.  However, the end results of both Murder in the Second Degree and Reckless Endangering in the Second Degree are offenses against the person and involve at least the risk of death.  <u>Cf.</u> <u>Kaeo</u>, 132 Hawai'i at 464-65, 323 P.3d at 108-09 (holding that the "end result" factor weighed in favor of finding assault in the first degree to be a lesser included offense of murder in the second degree where both offenses are "classified as offenses against the person, and both

4

result in actual physical harm to a person[,]" even though murder results in death and assault results in bodily injury); Kinnane, 79 Hawaiʻi at 56, 897 P.2d at 983 (finding the end results of attempted sexual assault in the second degree and sexual assault in the fourth degree to be the same because "[i]n both instances the victim is placed in jeopardy of being injured or is being injured by the defendant's conduct," (ellipsis, internal quotation marks, and citation omitted) even though sexual assault in the fourth degree "envisions a less serious injury or risk of injury [(sexual contact)] than attempted sexual assault in the second degree [(risk of sexual penetration)]").

Considering all factors, we conclude that Reckless Endangering in the Second Degree is a lesser included offense of Murder in the Second Degree under HRS § 701-109(4)(c).

We next determine whether there was a rational basis in the evidence in this case to support an instruction on the lesser included offense of Reckless Endangering in the Second Degree. See Flores, 131 Hawaiʻi at 51, 314 P.3d at 128 ("[J]ury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.").

This court decided a similar issue in State v. Magbulos, 141 Hawaiʻi 483, 413 P.3d 387 (App. 2018), cert. rejected, No. SCWC-14-0001337, 2018 WL 3062557 (Haw. June 21, 2018). In that case, the defendant was charged with and convicted of murder in the second degree. Id. at 484, 413 P.3d at 388. The trial court had instructed the jury on the lesser included offenses of reckless manslaughter and first-degree assault, but denied the defendant's request to instruct the jury on the lesser included offenses of assault in the second degree, assault in the third degree, and assault in the third degree by mutual affray. Id. at 498, 413 P.3d at 402. On appeal, the defendant asserted that the trial court erred in denying his

request to instruct the jury on the additional lesser included offenses. Id. This court discussed the development of the law on giving jury instructions on lesser included offenses, including State v. Haanio, 94 Hawaiʻi 405, 16 P.3d 246 (2001), Flores, 131 Hawaiʻi 43, 314 P.3d 120, and Kaeo, 132 Hawaiʻi 451, 323 P.3d 95. Magbulos, 141 Hawaiʻi at 498-99, 413 P.3d at 402-03. Applying the law to the facts of that case, this court then held:

> Here, the jury, after being instructed on the lesser included offenses of reckless manslaughter and first-degree assault, convicted [the defendant] of the charged offense of second-degree murder. Thus, unlike in Flores and Kaeo, the failure of the Circuit Court to instruct on the lower-level assault offenses did not present [the defendant's] jury with an "all or nothing" choice between the guilty verdict it rendered and a "complete acquittal." Instead, the jury had the option of finding [the defendant] guilty of manslaughter or finding him guilty of first-degree assault, but chose to find him guilty as charged of second-degree murder.
>
> Under these circumstances, we need not consider whether there was a rational basis in the evidence to acquit [the defendant] of second-degree murder and convict him of the lower-level assault offenses because we conclude that any error in failing to instruct on the lower-level assault offenses was harmless beyond a reasonable doubt. While the failure to instruct on a lesser included offense just below the offense for which the jury returned a guilty verdict is not automatically harmless error, we conclude that absent unusual circumstances, the failure to instruct on a lesser included offense two levels below the offense for which the defendant is found guilty will ordinarily be harmless. In this case, [the defendant] is contending that the failure to instruct on lesser included offenses that are at least three levels below the second-degree murder for which the jury found him guilty entitles him to a new trial. It strains credulity to believe that the jury who found [the defendant] guilty as charged of second-degree murder, despite being instructed on the lesser included offenses of manslaughter and first-degree assault, might reasonably have found him guilty of the lower-level assault offenses if instructed on these offenses. We therefore conclude that there is no reasonable possibility that the Circuit Court's failure to instruct on the lower-level assault offenses affected the outcome of this case.

Id. at 499, 413 P.3d at 403.

Magbulos is dispositive in favor of the State in this case. Here, Angei was charged with Murder in the Second Degree. The circuit court instructed the jury on the lesser included offenses of Reckless Manslaughter, Assault in the First Degree,

6

Assault in the Second Degree, and Assault in the Third Degree. The jury ultimately convicted Angei of Reckless Manslaughter. As in Magbulos, the jury was not faced with an "all or nothing" choice between the guilty verdict and a "complete acquittal" because the jury had the option of finding Angei guilty of lesser included offenses extending to multiple levels below the charged offense, but chose instead to find him guilty of Reckless Manslaughter. It "strains credulity" to believe that the jury who found Angei guilty of Reckless Manslaughter and rejected finding him guilty of any of the lesser included offenses of first-, second-, and third-degree assault, might reasonably have found him guilty of the lower-level offense of Reckless Endangering in the Second Degree if instructed on this offense. See id.; see also State v. Manuel, No. CAAP-18-0000420, 2019 WL 1747020, at *3 (Haw. App. Apr. 18, 2019) (SDO), cert. granted, No. SCWC-18-0000420, 2019 WL 4165809 (Haw. Sept. 3, 2019).

Thus, we conclude that there is no reasonable possibility that the circuit court's failure to instruct on Reckless Endangering in the Second Degree affected the outcome of this case.

## B. Motion for Judgment of Acquittal

Angei next argues that the circuit court erred in denying his motion for judgment of acquittal and rejecting his argument that the State failed to adduce evidence of compliance with the statutory requirements of HRS § 327C-1 (2010) pertaining to the decedent's death.

When reviewing the denial of a motion for judgment of acquittal,

> we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and

7

> probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Jhun, 83 Hawaiʻi 472, 481, 927 P.2d 1355, 1364 (1996) (citations and quotation marks omitted).

In his written motion for judgment of acquittal, Angei appeared to challenge the sufficiency of the evidence as to the element that Angei intentionally or knowingly caused the decedent's death. Angei argued in part that he did not cause the decedent's death because when the decedent was brought to the hospital, he was alive, and "[r]ather than keeping the decedent 'alive', a decision was made to 'pull the plug' by the family[.]" The remainder of his written motion, however, is premised on the alleged failure to comply with HRS chapter 327C.

HRS § 327C-1(a)-(d) provides:

> **§327C-1. Determination of death.** (a) Except as provided in subsection (b), a person shall be considered dead if, in the announced opinion of a physician or osteopathic physician licensed under part I of chapter 453, physician or osteopathic physician excepted from licensure by section 453-2(b)(3), physician assistant licensed under chapter 453, or registered nurse licensed under chapter 457, based on ordinary standards of current medical practice, the person has experienced irreversible cessation of spontaneous respiratory and circulatory functions. Death will have occurred at the time when the irreversible cessation of the functions first coincided.

> (b) In the event that artificial means of support preclude a determination that respiratory and circulatory functions have ceased, a person shall be considered dead if, in the opinion of an attending physician or osteopathic physician licensed under part I of chapter 453, or attending physician or osteopathic physician excepted from licensure by section 453-2(b)(3), and of a consulting physician or osteopathic physician licensed under part I of chapter 453, or consulting physician or osteopathic physician excepted from licensure by section 453-2(b)(3), based on ordinary standards of current medical practice, the person has experienced irreversible cessation of all functions of the entire brain, including the brain stem. The opinions of the physicians or osteopathic physicians shall be evidenced by signed statements. Death will have occurred at the time when the irreversible cessation of all functions of the entire brain, including the brain stem, first occurred. Death shall be pronounced before artificial means of support are withdrawn and before any vital organ is removed for purposes of transplantation.

8

(c)  When a part of a donor is used for direct organ transplantation under chapter 327, and the donor's death is established by determining that the donor experienced irreversible cessation of all functions of the entire brain, including the brain stem, the determination shall only be made under subsection (b).  The determination of death in all other cases shall be made under subsection (a).  The physicians or osteopathic physicians making the determination of death shall not participate in the procedures for removing or transplanting a part, or in the care of any recipient.

(d)  All death determinations in the State shall be made pursuant to this section and shall apply to all purposes, including but not limited to civil and criminal actions, any laws to the contrary notwithstanding; provided that presumptive deaths under the Uniform Probate Code shall not be affected by this section.

On appeal, Angei argues that neither of the two physicians who made pronouncements regarding the decedent's death was described as an "attending physician" or an "osteopathic physician."  Angei additionally contends that while the first physician pronounced the decedent "brain dead," the second physician pronounced the decedent "cardiac dead."  Furthermore, "[t]heir pronouncements were not memorialized by signed statements as required by statute."  Angei asserts that, because the State failed to adduce evidence of compliance with HRS chapter 327C, it did not meet its burden of proof regarding the cause of decedent's death.

HRS § 327C-1(d) states, in relevant part: "All death determinations in the State shall be made pursuant to this section and shall apply to all purposes, including . . . criminal actions[.]"  However, nowhere in the statute or the chapter in which it appears does it describe any consequences for a failure to comply with its outlined procedure for the determination of death, and what effect, if any, any such violation may have on criminal proceedings involving an individual's death.  Neither the statute nor the chapter in which it appears requires compliance with the procedure in proving the death of an individual for the purpose of proving an element of a criminal offense.  There is no requirement that the State prove compliance

with HRS chapter 327C in order to make a prima facie case of a decedent's death as an element of an offense for which a defendant is on trial.  To that extent, we hold that there is no merit to the basis upon which Angei relies in challenging the sufficiency of the evidence showing that Angei caused the decedent's death.

Rather, we conclude that there is sufficient evidence in the record to support a prima facie case.  Syres Kauai (Kauai), the decedent's friend who witnessed the incident, testified that during the physical altercation between Angei and the decedent, Angei had a knife with an approximately four-inch blade in his right hand while exchanging blows with the decedent. After Angei and the decedent ended their physical altercation and separated, Angei fled and Kauai noticed the decedent bleeding. While on the phone with an emergency operator, Kauai attempted to apply pressure to the decedent's multiple stab wounds before the decedent was taken to the hospital.  Of relevance, the parties also stipulated to the following facts, which were read to the jury: "[o]n January 29, 2018, at approximately 8:15 a.m., Dr. Chang made a brain death pronouncement for [the decedent] at Queen's Medical Center"; and "[o]n January 30, 2018, at approximately 5:56 p.m., the body was transferred to the Queen's Medical Center operating room.  Dr. Jacqueline Lee pronounced the decedent cardiac dead prior to organ donation."  Christopher Happy, M.D., the chief medical examiner for the City and County of Honolulu who conducted an autopsy on the body of the decedent, testified that the cause of death was stab wounds to the head and torso.  These facts constitute substantial evidence for the jury to conclude that Angei caused the decedent's death.

In light of this record, and in consideration of the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, we conclude that the State adduced substantial evidence of the element that Angei caused the death of the decedent.  Accordingly, the circuit court

10

did not err in denying Angei's motion for judgment of acquittal.

Based on the foregoing, the November 20, 2018 Judgment of Conviction and Sentence, entered by the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, June 30, 2020.

On the briefs:

Chad Kumagai,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Dana S. Ishibashi,
for Defendant-Appellant.

/s/ Derrick H. M. Chan
Presiding Judge


/s/ Keith K. Hiraoka
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge