**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000243
08-APR-2021
07:51 AM
Dkt. 66 SO**

NO. CAAP-18-0000243

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ANTONIO GIMBERNAT, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2DCW-17-0000982)

**SUMMARY DISPOSITION ORDER**
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Antonio Gimbernat (**Gimbernat**) appeals from the "Judgment and Notice of Entry of Judgment" (**Judgment**) entered by the District Court of the Second Circuit, Wailuku Division[1] on March 22, 2018. For the reasons explained below, we affirm the Judgment in part, vacate in part, and remand for resentencing consistent with this summary disposition order.

Gimbernat was charged by amended complaint with one count of Harassment, in violation of Hawaii Revised Statutes (**HRS**) § 711-1106(1)(b) and/or (f),[2] and one count of Disorderly

---

[1] The Honorable Kelsey T. Kawano presided.

[2] HRS § 711-1106 (2014) provides, in relevant part:

**§ 711-1106 Harassment.** (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

(continued...)

Conduct in violation of HRS § 711-1101(1)(c),[3] based on incidents that allegedly took place on February 22, 2017, at a McDonald's restaurant in Pukalani, Maui. Gimbernat pleaded not guilty.

A jury-waived trial began on November 17, 2017. The parties stipulated State's exhibits 1 and 2 (compact discs containing video camera footage) into evidence. The teenaged victims (**AM** and **CK**) testified at trial that while they were waiting for their food order, Gimbernat walked up behind them and yelled a racial epithet — with his hand raised — in an aggressive, threatening, angry tone that was loud enough for the entire restaurant to hear. They both testified that Gimbernat, an adult, was much larger then either of them. They both feared that Gimbernat was going to hurt them.

---

[2](...continued)

. . . .

    (b)   Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another; [or]

. . . .

    (f)   Makes a communication using offensively coarse language that would cause the recipient to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another.

  (2)   Harassment is a petty misdemeanor.

[3]    HRS § 711-1101 (2014) provides, in relevant part:

**§ 711-1101 Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

. . . .

    (c)   Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response[.]

The McDonald's employee who was working in the drive-thru window testified that Gimbernat went over to AM and CK and said something "in a tone that was sort of angry and loud[.]" The employee turned "to see what was going on." Other customers also turned toward Gimbernat, who "seemed angry, mad, upset about something." The employee testified she was worried for the teens' safety "because [Gimbernat's] tone of voice, and just the way he started walking after he made the loud noise. . . . [H]e seemed very upset and mad. I was scared." She alerted her manager that something was going on. A male customer got between Gimbernat and AM and pushed Gimbernat out of the restaurant. He did not return.

No other witnesses testified. The district court found Gimbernat guilty as charged on both counts; the court rejected Gimbernat's argument that the counts merged. The district court made the following findings:

> This incident occurred on February 22nd, 2017 at about 6:44 in the evening. The victims of alleged harassment were two teenagers, [AM], age 15 years; and [CK], age 16. [AM] has brown skin complexion. [CK] has fair skin complexion.
>
> They were, at the time of the incident, in a dating relationship. The couple entered a fast food restaurant in Pukalani, Maui.
>
> Inside they were accosted by defendant, Antonio Gimbernat, who said to them, I'm sick of you fucking niggers. He said this in a loud aggressive angry tone.
>
> [AM] was stunned, shocked, confused, frightened. And extremely offended. He thought defendant was going to hit him. [CK] was shocked, scared, threatened and fearful that the defendant was going to hurt them.
>
> Defendant's words immediately caused the disturbance that drew the attention of the two diners within the restaurant. Causing them to leave their seats and engage with the defendant.
>
> The restaurant employee manning the drive-thru window left her work station to enter the dining area to see what the disturbance was about. Defendant continued his afront [sic] of the couple saying in the same loud, aggressive, angry tone, you shouldn't be with that white girl.
>
> The restaurant clerk . . . was scared for herself. Worried that the couple, and perhaps others, would be hit, was concerned that the restaurant customers who were now getting involved in the confrontation.

3

> And in the span of a few seconds, between the first and second comments, [AM] had recovered from his initial shock and angrily approached the defendant <u>causing one of the two customers to step in between to avert a physical fight</u>.
>
> This customer turned defendant around and escorted him out of the restaurant door while [CK] pulled her boyfriend [AM] back away from the defendant.

(Underscoring added.)

The district court sentenced Gimbernat to 30 days in jail on each count, to run concurrently, with credit for time served.  This appeal followed.

Gimbernat raises three points of error:

1.   there was insufficient evidence to convict him of harassment;

2.   there was insufficient evidence to convict him of petty misdemeanor disorderly conduct; and

3.   even if there was sufficient evidence to sustain both convictions, the harassment and disorderly conduct offenses merged.

**1.    The evidence was sufficient to <u>support a conviction for harassment.</u>**

When an appellate court reviews the sufficiency of evidence on appeal:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

<u>State v. Richie</u>, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (citations omitted).

Gimbernat argues that his conduct could not reasonably have caused AM and CK to believe that he intended to cause bodily injury to them or to anyone else, or to cause property damage. The evidence presented at trial, viewed in the strongest light

for the prosecution, established that AM and CK reasonably believed that Gimbernat intended to cause them bodily injury. Gimbernat's first point of error is without merit.

> **2.    The district court did not find facts
> sufficient to support a conviction for
> <u>petty misdemeanor disorderly conduct.</u>**

Gimbernat concedes that the district court "found that Gimbernat's use of offensively coarse language inconvenienced several customers and restaurant employees in addition to [AM] and [CK]."  He argues there was no evidence he intended to cause substantial harm or serious inconvenience, which is an element of petty misdemeanor (as opposed to violation) disorderly conduct.

HRS § 707-1101(3) provides:

> Disorderly conduct is a petty misdemeanor if it is the
> defendant's intention to cause substantial harm or serious
> inconvenience, or if the defendant persists in disorderly
> conduct after reasonable warning or request to desist.
> Otherwise disorderly conduct is a violation.

The district court stated, when announcing its decision on the disorderly conduct count:

> Defendant's language was offensively coarse.  The
> public was affected.  There were four other persons
> subjected to this language besides the primary target of
> defendant's racist (inaudible) language, being [AM].
>
> Also present were [CK], the two customers in the
> restaurant, and the employee of the restaurant.  All of whom
> were present.  All of whom were drawn into this
> confrontation.  Which did result in inconvenience or alarm
> by them.
>
> [CK]'s date was spoiled.  The customer's meals were
> interrupted.  The employees [sic] work duties were
> interfered with.  The language was likely and did provoke a
> violence -- violent response from [AM].  And defendant was
> fully aware of this situation and consciously disregarded
> the risk that his language would be offensive.
>
> The Court finds the defendant guilty on count two.

The district court made no finding that Gimbernat "intended to cause substantial harm or serious inconvenience."  Such a finding was necessary for Gimbernat to be convicted of a petty

5

misdemeanor. Accordingly, it was error for the district court to sentence Gimbernat to 30 days for the petty misdemeanor disorderly conduct offense; Gimbernat should have been sentenced for a violation.

> **3.** **The district court's finding that the harassment and disorderly conduct offenses did not merge was supported by substantial evidence.**

Gimbernat argues he cannot be convicted of both harassment and disorderly conduct because the offenses merged under HRS § 701-109(1)(e). That statute provides, in relevant part:

> **§ 701-109 Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
>
> . . . .
>
> (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides the specific periods of conduct constitute separate offenses.

Gimbernat claims to have committed only one crime because he "engaged in only one continuous and uninterrupted course of criminal conduct directed at one criminal goal, i.e. to harass one specific individual [AM] by making offensive racially charged remarks."

The district court stated, while addressing Gimbernat's merger argument:

> The Court is considering where this is a situation of defendant's conduct was, as the cases note, one continuing course of conduct, in which the Court would have to say that there was but one intention, one general impulse, one plan. And the Court will have the record reflect that in its view the evidence indicated that that was not the situation. While we have a single episode here of conduct, there were separate intentions. There were separate acts.
>
> We had the initial harassment of the male minor. And we had a second incident which occurred across the room,

6

> bringing into the fray a restaurant employee who was nervous and scared. The defendant was yelling at such a volume that she had to come out from her drive-thru window to see what was going on.
>
> The customers in the restaurant were alarmed, so much so that they stood up from the table and had to intercede.
>
> So, there were separate things going on. Separate proofs, separate offenses, that did not merge here.

(Underscoring added.)

The district court's findings are supported by State's Exhibit 1 (the McDonald's security video). The video (which does not have audio) shows Gimbernat seated in the restaurant, eating his food. He appears to be watching AM and CK, who are standing together waiting for their food order. Gimbernat stands, picking up his food tray. He does not walk toward the trash receptacle, which is to his right and across the room from where AM and CK are standing. Instead, he walks to his left, behind another table and around a woman standing nearby. He is holding his food tray in his right hand. He approaches AM and CK from behind. He appears to be yelling at the teens. The teens turn to look at him. He raises his left arm and hand. CK takes a step back.

Gimbernat then turns his back on AM and CK. He takes 8 or 9 steps across the restaurant to the trash receptacle. He is facing the security camera and does not appear to be speaking as he is walking toward the trash receptacle. He throws away his trash. At this time the video shows Gimbernat, AM, CK, the woman standing, and four other people seated, in the restaurant.

After Gimbernat throws his trash in the receptacle, he turns to face AM and CK, who are still standing in the same spot. He raises his right hand and arm. He appears to be yelling across the restaurant. He makes a sweeping gesture with his right arm and hand. At that point, a man in a red shirt and a woman in a black outfit stand up; they appear to be speaking to Gimbernat, who turns toward them. They both begin to step toward Gimbernat and point toward the door, apparently urging that Gimbernat leave the restaurant.

AM then begins walking toward Gimbernat, holding his phone as if he is filming (in fact State's Exhibit 2 is video from AM's phone). As Gimbernat turns to face AM, the man in the red shirt steps between Gimbernat and AM. CK pulls AM back toward her. The man in the red shirt puts his hand on Gimbernat's shoulder. Gimbernat does not resist as the man guides Gimbernat toward the door, away from AM.

The district court's finding that Gimbernat committed acts independently violative of the harassment statute and the disorderly conduct statute is supported by substantial evidence and is not clearly erroneous. Under those facts, HRS § 701-109(1)(e) does not prohibit convictions under both the harassment and disorderly conduct statutes. State v. Arceo, 84 Hawaiʻi 1, 21, 928 P.2d 843, 863 (1996) (noting that HRS § 701-109(1)(e) "does not apply where [the defendant's] actions constitute separate offenses under the law.") (quoting State v. Hoopii, 68 Haw. 246, 251, 710 P.2d 1193, 1197 (1985)); State v. Freeman, 70 Haw. 434, 441, 774 P.2d 888, 893 (1989) (holding that "[i]n the course of [the defendant's] criminal transaction, he committed acts independently violative of both statutes and therefore, HRS § 701-109(1)(e) does not prohibit multiple convictions for the separate and distinct offenses[.]")

Moreover, the Hawaiʻi Supreme Court has held:

> Whether a course of conduct gives rise to more than one crime depends in part on the intent and objective of the defendant. The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. Where there is one intention, one general impulse, and one plan, there is but one offense. All factual issues involved in this determination must be decided by the trier of fact.

State v. Alston, 75 Haw. 517, 531, 865 P.2d 157, 165 (1994) (underscoring added) (citations omitted). The district court did not err when it denied Gimbernat's motion to merge the harassment and disorderly conduct counts.

8

<u>**CONCLUSION**</u>

For the foregoing reasons, the Judgment entered by the district court on March 22, 2018, is affirmed with respect to Gimbernat's conviction for harassment. With respect to Gimbernat's conviction for disorderly conduct, his sentence for a petty misdemeanor is vacated and this matter is remanded to the district court for resentencing consistent with this summary disposition order.

DATED: Honolulu, Hawaiʻi, April 8, 2021.

On the briefs:

Peter A. Hanano,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Matthew K. Kaʻaihue,
Deputy Public Defender,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge