Electronically Filed
Supreme Court
SCWC-18-0000420
23-DEC-2020
08:17 AM
Dkt. 13 OP

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

WELDEN MANUEL,
Petitioner/Defendant-Appellant.

SCWC-18-0000420

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000420; CR. NO. 1CPC-17-0001456)

DECEMBER 23, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.[1]

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Defendant-Appellant Welden Manuel was charged with Assault in the Second Degree after he stabbed complaining witness Lianel Dison (Dison) in the chest during an altercation in Honolulu on October 13, 2017.

---

[1] Associate Justice Richard W. Pollack, who was a member of the court when the oral argument was held, retired from the bench on June 30, 2020.

At trial, Dison and several Honolulu Police Department (HPD) officers testified; Manuel did not. At the close of trial, the circuit court instructed the jury on assault in the second and third degrees. The circuit court also gave the jury an assault in the third degree by mutual affray (Mutual Affray) instruction. Neither party requested any other instruction. The jury convicted Manuel of second-degree assault.

In his application for writ of certiorari, Manuel asserts that Reckless Endangering in the Second Degree is an included offense of assault in the second degree, and that there was a rational basis in the evidence to acquit him of assault in the second degree and to convict him of reckless endangering in the second degree instead. Therefore, Manuel claims that the circuit court was required to instruct the jury on reckless endangering in the second degree.

We agree. Because we hold that reckless endangering in the second degree is an included offense of assault in the second degree and, under the circumstances of this case, there was a rational basis in the evidence to acquit Manuel of assault in the second degree and convict him of reckless endangering in the second degree, the circuit court here was required to instruct the jury on second-degree reckless endangering under Hawai'i Revised Statutes (HRS) § 707-711(1)(d). We vacate the ICA's Judgment on Appeal which affirmed Manuel's Judgment of

Conviction and Sentence and remand to the circuit court for a new trial.

## I.    BACKGROUND

On October 16, 2017, the State charged Manuel with Assault in the Second Degree, in violation of HRS § 707-711(1)(d).[2]

### A.    Trial

Trial began on February 27, 2018.[3]  During opening statements, the State asserted that Manuel had been drinking on the night of the altercation, Manuel instigated the attack, and Dison did not fight back.  During the defense's opening statement, Manuel's attorney presented the theory that Manuel was not guilty of second-degree assault because he acted in self-defense.

#### 1.    Dison's Testimony

Dison testified that on the night of October 13, 2017, he was at Pier 38 preparing to leave on a fishing trip.  Dison explained that while he was walking to the fishing boat, he saw

---

[2]    HRS § 707-711(1)(d) (2015) provides,

> Assault in the second degree. (1) A person commits the offense of assault in the second degree if:
>
>  . . . .
>
> > (d)  The person intentionally or knowingly causes bodily injury to another with a dangerous instrument[.]

[3]    The Honorable Karen T. Nakasone presided.

3

Manuel pass by on a bike. Although Dison and Manuel were close at the time, Dison attempted to hide from Manuel because he wanted to get on the boat. However, Manuel saw Dison and called him over.

Instead of proceeding to the boat, Dison followed Manuel to a dark restroom area on the pier. Although the area was dark, Dison stated that he saw Manuel had bloodshot eyes. Dison also claimed that Manuel slurred his speech and smelled of alcohol. There, Manuel asked Dison, "why I do that[,]" to which he responded "Did what?" Dison explained that he did not know what Manuel was talking about and decided to leave. However, as Dison tried to walk away, Manuel hit him on the head.

After being hit in the head, Dison claimed that he turned around, saw Manuel open a folding knife with a three-inch blade, and heard the blade click into place. Dison testified that Manuel then stabbed him in the left side of his chest. Dison claimed that after the stabbing, Manuel said, "That's what you get," and tried to leave on his bike. However, Dison ran after Manuel, grabbed the bike, and tried to pull it away from Manuel.

Dison testified that he and Manuel struggled to gain control of the bike, during which time Manuel sliced Dison's right arm with the knife. Dison claimed that he then let go of the bike and yelled for someone to call 911.

During cross-examination, Dison asserted that he had not been drinking on the night of the incident. Additionally, Dison admitted that he did not tell the detectives that he had heard the blade click into place or that Manuel told him, "That's what you get."

### 2. Officer Darrin Lum's Testimony

HPD Officer Darrin Lum (Officer Lum) responded to the call at Pier 38. Officer Lum testified that Dison was going in and out of consciousness, and was not able to answer all of his questions. Officer Lum believed Dison was intoxicated because he could smell an odor of alcohol emanating from Dison.[4] Officer Lum observed Dison's chest wound to be around 1.5 inches long and 0.5 inches wide. Officer Lum stated that he did not see anyone else in the area.

### 3. Officer Bryce Hamamoto's Testimony

HPD Officer Bryce Hamamoto (Officer Hamamoto) arrived at the scene and noticed that Dison was bleeding and had injuries to his arm and a stab wound to his chest. Dison appeared to be coherent but in a lot of pain. Officer Hamamoto was assigned to search for suspects. Officer Hamamoto eventually located Manuel near Kewalo Basin near a fishing boat

---

[4]     HPD Officer Jon Ishikawa (Officer Ishikawa) also responded to the call for assistance. Officer Ishikawa testified that he believed Dison was intoxicated because his speech was slurred and his eyes were glassy.

called "Ping Tan." Officer Hamamoto observed that Manuel appeared to have been drinking.

### 4. Officer Arllen Laufasa's Testimony

Officer Arllen Laufasa (Officer Laufasa) was also present when the officers located Manuel on the night of the altercation. Officer Laufasa testified that he searched Manuel and recovered a red rag and a black folding knife from Manuel's pocket. The knife's blade was three- to four-inches long and matched the description Dison had provided of the weapon used in the stabbing. The State submitted the knife into evidence as State's Exhibit 29.

### 5. Detective Eric Lalau's Testimony

HPD Detective Eric Lalau (Detective Lalau) was assigned to investigate the stabbing of Dison. Detective Lalau met with Dison on the evening of the offense and observed that Dison had a golf-ball-size bump on the back of his head and wounds to his chest and right forearm. Detective Lalau was unable to locate any witnesses besides Dison who could identify a suspect. Detective Lalau testified that no surveillance video footage of the stabbing was recovered. Detective Lalau stated that a knife with an approximately three-inch blade was recovered. Detective Lalau explained that he did not order DNA testing for the knife because it did not appear to have blood on

it, and that he was not able to conduct fingerprint testing on the knife because it was taken from Manuel's pocket.

### 6.  The Defense

After the State rested, Manuel moved for judgment of acquittal, which the circuit court denied.  Manuel did not testify at trial and did not call any witnesses to testify in his defense.

## B.  Jury Instructions, Verdict, and Sentencing

On February 28, 2018, the circuit court and the parties met to settle a portion of the jury instructions on the record.  Manuel's attorney requested that the circuit court instruct the jury on assault in the third degree under HRS § 707-712(1)(a) and (b).[5]  The State objected to instruction on any included offense of assault in the second degree.  Although the circuit court itself proposed including an instruction on third-degree assault, it deferred making a decision regarding whether to include an instruction on assault in the third degree to "see what comes out in the rest of the case."  The circuit court additionally proposed instructing the jury on Mutual

---

[5]    HRS § 707-712(1) (2015) provides,

>    Assault in the third degree. (1) A person commits the offense of assault in the third degree if the person:
>
>    (a)  Intentionally, knowingly, or recklessly causes bodily injury to another person; or
>    (b)  Negligently causes bodily injury to another person with a dangerous instrument.

Affray under HRS § 707-712(2).[6]  Defense counsel agreed to the circuit court's proposals.  However, the State objected.  When the circuit court asked if either party wanted to propose any other instructions, neither party requested that the circuit court give a reckless endangering in the second degree instruction.

The circuit court subsequently instructed the jury on the offenses of assault in the second degree, assault in the third degree, and Mutual Affray.

The assault in the second degree instruction read,

> A person commits the offense of Assault in the Second Degree if he intentionally or knowingly causes bodily injury to another person with a dangerous instrument.
>
> There are three material elements of the offense of Assault in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These three elements are:
>
> 1.  That, on or about October 13, 2017 in the City and County of Honolulu, the Defendant caused bodily injury to Lianel Dison; and
>
> 2.  That the Defendant did so with a dangerous instrument; and
>
> 3.  That the Defendant did so intentionally or knowingly.

The circuit court further instructed that "'[b]odily injury' means physical pain, illness, or any impairment of physical

---

[6]    HRS § 707-712(2) (2015) provides,

> (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

condition[,]" and that "'[s]erious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The circuit court also instructed the jury on assault in the third degree, HRS § 707-712(1)(b), and Mutual Affray, HRS § 707-712(2). The assault in the third degree instruction read,

> A person commits the offense of Assault in the Third Degree if he negligently causes bodily injury to another person with a dangerous instrument.
>
> There are three material elements of the offense of Assault in the Third Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These three elements are:
>
> 1. That, on or about October 13, 2017 in the City and County of Honolulu, the Defendant caused bodily injury to Lianel Dison; and
>
> 2. That the defendant did so with a dangerous instrument; and
>
> 3. That the Defendant did so negligently.

The instruction for Mutual Affray read,

> If you find that the prosecution has proven the offense of Assault in the Third Degree beyond a reasonable doubt, then you must also consider whether the fight or scuffle was entered into by mutual consent, whether expressly or by conduct.
>
> You must determine whether the prosecution has proven beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent. This determination must be unambiguous and is to be indicated by answering 'Yes' or 'No' on a special interrogatory that will be provided to you.

On March 1, 2018, the jury found Manuel guilty of assault in the second degree.  On May 3, 2018, the circuit court sentenced Manuel to an indeterminate term of five years' incarceration.

## C.    ICA Proceedings

On May 18, 2018, Manuel filed a notice of appeal to the ICA.  In his opening brief to the ICA, Manuel argued that the circuit court erred when it failed to instruct the jury on the misdemeanor offense of reckless endangering in the second degree.  Manuel argued that second-degree reckless endangering is an included offense of second-degree assault, and that "there was a rational basis in the evidence to acquit [Manuel] of assault in the second degree and convict him of reckless endangering in the second degree."  Therefore, Manuel contended, the circuit court was required to instruct the jury on reckless endangering in the second degree.

In its answering brief, the State argued that second-degree reckless endangering is not an included offense of assault in the second degree because the conduct is not the same.  In particular, the State asserted that second-degree assault requires use of a dangerous instrument while reckless endangering in the second degree does not.  Additionally, the State averred that the results of the charges are not the same because second-degree assault requires bodily injury whereas

reckless endangering in the second degree requires serious bodily injury or death. The State further contended that even if reckless endangering in the second degree is an included offense, there was no rational basis in the record for acquitting Manuel of second-degree assault and convicting him of reckless endangering in the second degree. The State argued that Manuel's conduct was clearly intentional or knowing, so there was no evidence that Manuel had acted recklessly to support a conviction for second-degree reckless endangering. Manuel did not file a reply brief.

The ICA entered a Summary Disposition Order on April 18, 2019. The ICA affirmed the circuit court's Judgment of Conviction and Sentence, and held that, pursuant to its holding in State v. Magbulos, 141 Hawai'i 483, 413 P.3d 387 (App. 2018), there was "no reasonable possibility that the Circuit Court's failure to instruct on the lower-level reckless endangering offense affected the outcome of this case."

The ICA therefore affirmed the circuit court's Judgment of Conviction and Sentence. The ICA issued its Judgment on Appeal on May 20, 2019.

We hold that the ICA erred and remand this matter to the circuit court.

## II.  STANDARD OF REVIEW

Whether an offense is an included offense of another is a question of law.  State v. Friedman, 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000).  The appellate courts review questions of law de novo under the right/wrong standard of review.  Id.

## III. DISCUSSION

### A.   The circuit court erred in failing to instruct the jury on the elements of reckless endangering in the second degree.

Manuel argues that the circuit court should have sua sponte instructed the jury on reckless endangering in the second degree, which, he asserts, is an included offense of assault in the second degree.

This court has held that "jury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."  State v. Flores, 131 Hawai'i 43, 51, 314 P.3d 120, 129 (2013) (citing State v. Stenger, 122 Hawai'i 271, 296, 226 P.3d 441, 466 (2010)).  However, this court does not notice errors that were not raised before the circuit court unless this court determines that plain error has been committed and substantial rights have been affected thereby.  State v. Miller, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010).

At trial, neither party requested that the circuit court instruct the jury on reckless endangering in the second degree. Therefore, despite the circuit court's duty to instruct on included offenses, any error in failing to do so is still analyzed under plain error review. See Miller, 122 Hawai'i at 100, 223 P.3d at 165. We review the circuit court's failure to instruct the jury on reckless endangering in the second degree for plain error because, as there was a rational basis in the evidence to acquit Manuel of assault in the second degree and convict him of reckless endangering in the second degree, the circuit court's failure to instruct the jury on reckless endangering in the second degree affected Manuel's substantial rights. Id.

1. **Reckless endangering in the second degree is an included offense of assault in the second degree.**

Manuel argues that reckless endangering in the second degree is an included offense of assault in the second degree. Manuel contends that, based on the statutory definitions of second-degree assault and reckless endangering in the second degree, "it is impossible to commit assault in the second degree based on intentionally or knowingly causing bodily injury without committing reckless endangering in the second degree."

HRS § 707-711(1)(d) provides,

> (1) A person commits the offense of assault in the second degree if:

. . . .

> (d)    The person intentionally or knowingly causes bodily injury to another with a dangerous instrument[.]

HRS § 707-714(1)(a) (2015) provides,

> (1) A person commits the offense of reckless endangering in the second degree if the person:
>
> (a)    Engages in conduct that recklessly places another person in danger of death or serious bodily injury[.]

HRS § 701-109(4) (2015) provides that an offense is included in another offense when:

> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
>
> (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

"[T]he general rule is that 'an offense is included if it is impossible to commit the greater without also committing the lesser.'" Friedman, 93 Hawaiʻi at 72, 996 P.2d at 277 (quoting State v. Burdett, 70 Haw. 85, 87-88, 762 P.2d 164, 166 (1988)). Additionally, in applying HRS § 701-109(4)(a), we have held that "several factors may be considered in determining whether an offense is a lesser included offense of another: (1) the degree of culpability; (2) the legislative statutory scheme; and (3) the end result." Friedman, 93 Hawaiʻi at 72, 996 P.2d at 277 (citing State v. Alston, 75 Haw. 517, 533, 865 P.2d

14

157, 166 (1994)). Based on the general rule, the three factors enunciated in Alston, and the fact that reckless endangering in the second degree requires an intermediate degree of culpability between assault in the second degree and the instructed offense of assault in the third degree, we hold that reckless endangering in the second degree, HRS § 707-714(1)(a), is an included offense of assault in the second degree, HRS § 707-711(1)(d).

> **a.  It is impossible to commit assault in the second degree without also committing reckless endangering in the second degree.**

Under the general rule, second-degree reckless endangering appears to be an included offense of assault in the second degree because it is impossible to commit second-degree assault without also committing reckless endangering in the second degree. See Friedman, 93 Hawai'i at 72, 996 P.2d at 277. First, the level of culpability required to commit assault in the second degree, intentionally or knowingly, subsumes the level of culpability required to commit reckless endangering in the second degree, recklessly. See HRS § 702-208 (2015) ("When the law provides that recklessness is sufficient to establish an element of an offense, that element also is established if, with respect thereto, a person acts intentionally or knowingly."). In other words, if a person acts knowingly or intentionally, a state of mind element that requires recklessness is satisfied.

Further, based upon the statutory definitions in HRS Chapter 707, one cannot cause bodily injury with a dangerous instrument (assault in the second degree) without placing that person in danger of death or serious bodily injury (reckless endangering in the second degree). HRS § 707-700 (2015) provides,

> "[d]angerous instrument" means any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.

Therefore, although the statutory definitions of bodily injury[7] and serious bodily injury[8] are different, the use of a dangerous instrument necessarily places the victim in danger of death or serious bodily injury. Accordingly, reckless endangering in the second degree is an included offense of assault in the second degree.

> **b.    The Alston factors indicate that reckless endangering in the second degree is an included offense of assault in the second degree.**

The factors set forth in Alston also indicate that second-degree reckless endangering is an included offense of assault in the second degree. First, "[r]egarding the degree of culpability, the rule is that the lesser included offense cannot

---

[7]    HRS § 707-700 provides, "'[b]odily injury' means physical pain, illness, or any impairment of physical condition."

[8]    HRS § 707-700 provides, "'[s]erious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

have a mental state greater than or different from that which is required for the charged offense." Alston, 75 Haw. at 534, 865 P.2d at 166 (emphasis in original). The Alston court explained that "different" means that the mental states intend a different result, not different levels of culpability. See id. (holding that specific intent to cause another's absence from an official proceeding is different from intent to cause, or recklessness in causing, terror.). In other words, the level of culpability (i.e., intentionally, knowingly, recklessly, or negligently) of the lesser offense can be less than that of the greater offense, but the intended result cannot be different. Here, the mental states for both crimes require some level of intent that a person become injured by the criminal conduct, so the mental state is not impermissibly different under the Alston factors. Moreover, the level of culpability for reckless endangering in the second degree, recklessness, is less than the level of culpability required for assault in the second degree, intentional or knowing. HRS § 702-208 cmt. Therefore, second-degree reckless endangering does not have a mental state that is greater than or different from second-degree assault.

Second, "[t]he legislative statutory scheme of both the greater and lesser offense should reflect a legislative intent to protect similar societal interests." Friedman, 93 Hawai'i at 72, 996 P.2d at 277. The classification of two crimes

17

under different penal chapters indicates the legislature's intent to protect different societal interests and that one crime would not be the lesser-included of the other. Burdett, 70 Haw. at 89, 762 P.2d at 167. While the inclusion of two crimes in the same penal chapter does not necessarily mean that one is the lesser-included offense of the other, see State v. Freeman, 70 Haw. 434, 437, 774 P.2d 888, 890 (1989), it does indicate that the legislature intended to protect similar societal interests. See Burdett, 70 Haw. at 89, 762 P.2d at 167. Here, the offenses of assault in the second degree and reckless endangering in the second degree are set forth in the same penal chapter – HRS Chapter 707 "Offenses Against the Person." The forbidden end results, bodily injury to a person and placing a person in danger of serious bodily injury or death, contemplate protecting the same societal interest – preventing people from physically injuring other people. Therefore, the legislative statutory scheme for both offenses reflects an intent to protect similar societal interests.

Finally, the "lesser included offense should produce the same end result as the greater charged offense." Alston, 75 Haw. at 535, 865 P.2d at 166-67. This factor weighs in favor of second-degree reckless endangering being an included offense of assault in the second degree because both offenses result in a person being placed in danger of serious bodily injury or death.

If a person is merely injured with a dangerous instrument (which, by definition, must be capable of producing death or serious injury), then the person was placed in danger of death of serious bodily injury. In other words, but for some luck, the dangerous instrument could have - but did not - produce death or serious bodily injury. The end result of second-degree assault, then, is injury plus the accompanying danger of something worse. Similarly, the end result of reckless endangering in the second degree is that a person is placed in danger of death or serious bodily injury.

> c. **Reckless endangering in the second degree is an included offense because it relies on an intermediate level of culpability between assault in the second and third degrees.**

Additionally, it defies common sense to include assault in the third degree as an included offense of second-degree assault while excluding reckless endangering in the second degree. The relevant distinction between assault in the second and third degrees in the circuit court's jury instructions is the defendant's level of culpability. In order to convict Manuel for second-degree assault, the jury was required to find that defendant "<u>intentionally or knowingly</u> cause[d] bodily injury to another with a dangerous instrument." HRS § 707-711(d) (emphasis added). In order to convict Manuel for third-degree assault, by contrast, the jury was required to

19

find that defendant "negligently cause[d] bodily injury to another with a dangerous instrument." HRS § 707-712(b) (emphasis added). Our penal code identifies four tiers of culpability. HRS § 702-206 cmt. In descending order, these tiers are intentionally, knowingly, recklessly, and negligently. HRS § 702-208 cmt. A situation in which a defendant recklessly caused bodily injury to another with a dangerous instrument is therefore necessarily an intermediate between assault in the second and third degrees. Thus, reckless endangering in the second degree, an offense in which a defendant recklessly causes bodily injury to another with a dangerous instrument, must constitute an included crime of second-degree assault.

Second-degree reckless endangering is a lesser-included offense of assault in the second degree. Under the general rule, one cannot commit second-degree assault without also committing reckless endangering in the second degree. Further, the Alston factors are satisfied because second-degree reckless endangering has the same mens rea but a lesser degree of culpability than assault in the second degree, the legislature intended for the two crimes to protect the same societal interests, and the two crimes produce the same result. Lastly, given that second-degree reckless endangering is based upon an intermediate degree of culpability between assault in the second and third degrees, reckless endangering in the second

degree must also be considered an included offense of second-degree assault. We therefore hold that reckless endangering in the second degree is an included offense of assault in the second degree under HRS § 707-711(1)(d).

2.   **There was a rational basis in the evidence to acquit Manuel of assault in the second degree and convict him of reckless endangering in the second degree.**

Manuel argues that there is a rational basis to support the second-degree reckless endangering instruction. Manuel asserts that "[t]here is no question that Manuel wielded the knife in complete disregard of the risk that his conduct placed Dison in danger of death or serious bodily injury," and that

> based on the evidence that was presented, the jury could have acquitted [Manuel] of the charged offense of assault in the second degree based on intentionally or knowingly causing bodily injury with a dangerous instrument and convicted him of the included offense of recklessly engaging in conduct that placed Dison in danger of death or serious bodily injury.

We have made clear that "jury instructions on lesser-included offenses must be given where there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." Flores, 131 Hawai'i at 51, 314 P.3d at 128.

Here, there was a rational basis in the evidence to acquit Manuel of second-degree assault and to convict him of

reckless endangering in the second degree based on the state of mind and conduct elements of second-degree reckless endangering.

First, there was a rational basis for the jury to find that Manuel acted recklessly. Notably, Dison's testimony raises questions regarding his credibility. For example, although Dison spoke with detectives after the incident, he did not tell the detectives about crucial details such as hearing the knife blade click into place or that Manuel said "That's what you get." Additionally, although Dison asserted that he had not been drinking, at least two officers testified that they smelled alcohol on Dison. Moreover, the officers testified that Manuel appeared to have been drinking on the night of the incident as well. Thus, a reasonable juror could have found that Dison's testimony was not entirely credible and that Manuel lacked the requisite intent, i.e., intentionally or knowingly, to commit second-degree assault. However, a reasonable juror may still have determined that an intoxicated Manuel should have understood the potential risk of serious injury arising from opening a knife during an altercation. Accordingly, the jury could have found that Manuel acted recklessly.

Second, there was a rational basis for the jury to find that Manuel's conduct (stabbing and cutting Dison) placed Dison in danger of serious bodily injury or death. Again, HRS § 707-700 defines "dangerous instrument" as a firearm or a

"weapon, device, instrument, material, or substance . . . , which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." (Emphasis added.) The circuit court instructed the jury on assault in the second and third degrees with a dangerous instrument. The use of a dangerous instrument placed Dison in danger of death or serious injury by definition, because the statutory definition requires a dangerous instrument to be used or intended to be used in a way that is capable of causing death or serious bodily injury. See HRS § 707-700. Even setting the dangerous instrument instruction aside, there was a rational basis in the evidence for the jury to conclude that Manuel placed Dison in danger of death or serious bodily injury. Manuel stabbed Dison in the chest with a three-inch blade. It was dark and Manuel may have been intoxicated. Manuel could have severed a major blood vessel or punctured a lung, resulting in Dison's death or serious bodily injury. Therefore, there was a rational basis in the evidence for the jury to find that the conduct element of reckless endangering in the second degree was met.

There was consequently a rational basis in the evidence to support the state of mind and conduct elements of second-degree reckless endangering. Therefore, there was a rational basis in the evidence to convict Manuel of reckless

endangering in the second degree, and the circuit court erred when it failed to instruct the jury accordingly.

## IV.  CONCLUSION

We hold that reckless endangering in the second degree is a lesser-included offense of assault in the second degree. Because, in this case, there was a rational basis in the evidence to acquit Manuel of assault in the second degree and to convict him of reckless endangering in the second degree, the circuit court erred in failing to instruct the jury on reckless endangering in the second degree.  Accordingly, we vacate the ICA's May 20, 2019, Judgment on Appeal, which affirmed the circuit court's May 3, 2018, Judgment of Conviction and Sentence and remand for a new trial.

William H. Jameson, Jr.
for petitioner

Loren J. Thomas
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

